ROBERT BAUER *v.* WASTE MANAGEMENT
OF CONNECTICUT, INC.
(14949)

WASTE MANAGEMENT OF CONNECTICUT, INC. *v.*
ZONING COMMISSION OF THE
TOWN OF NEW MILFORD
(14951)

CALLAHAN, BORDEN, BERDON, KATZ and PALMER, Js.

---

Argued March 17—decision released July 11, 1995

*Jeffrey B. Sienkiewicz*, with whom was *Michael S. McKenna*, for the appellant (substitute plaintiff in Docket No. 14949, defendant in Docket No. 14951).

*Timothy S. Hollister*, with whom was *Clare E. Kindall*, for the appellee (defendant in Docket No. 14949, plaintiff in Docket No. 14951).

*William H. Ethier* filed a brief for the Home Builders Association of Connecticut, Inc., as amicus curiae in Docket No. 14951.

*Bruce J. Parker*, pro hac vice, *Andrew J. Pincus*, pro hac vice, and *Richard G. Adams* filed a brief for the National Solid Wastes Management Association as amicus curiae in Docket No. 14951.

BORDEN, J. The principal issues in these appeals and cross appeal are whether the trial court properly determined that: (1) the New Milford zoning commission (commission) had not waived its opportunity to restrict the height of a landfill in New Milford (landfill) owned and operated by Waste Management of Connecticut, Inc. (Waste Management), by the commission's failure

to appeal from the issuance of a department of environmental protection (DEP) expansion permit (permit); (2) the ninety foot height limitation imposed by the commission was not preempted by the DEP permit and by the Connecticut Solid Waste Management Act, General Statutes § 22a-207 et seq., and the regulations promulgated thereunder; (3) the vertical expansion of the landfill constitutes a permissible intensification of a preexisting nonconforming use under the New Milford zoning regulations; (4) the zoning enforcement officer was estopped from enforcing the ninety foot height limitation; and (5) the enactment of a ninety foot height limitation constituted an unconstitutional taking of Waste Management's property without just compensation. We reverse the judgment of the trial court in both cases.

These appeals arise from two separate actions: *Bauer* v. *Waste Management of Connecticut, Inc.*, (Docket No. 14949) (enforcement action); and *Waste Management of Connecticut, Inc.* v. *Zoning Commission*, (Docket No. 14951) (administrative appeal). In the administrative appeal, the commission appeals and challenges the trial court's conclusion that a ninety foot height limitation imposed on the landfill by the commission constitutes an unconstitutional taking of Waste Management's property in violation of article first, § 11, of the Connecticut constitution.[1] Waste Management cross appeals and challenges the trial court's conclusion that the commission had not waived its opportunity to seek height restrictions by its failure to appeal from the issuance of the DEP permit, and the court's conclusion that the height regulation was not preempted by state law. In the enforcement action, the zoning enforcement officer for New Milford (zoning enforcement officer)

---

[1] Article first, § 11, of the Connecticut constitution provides: "The property of no person shall be taken for public use, without just compensation therefor."

appeals from the trial court's judgment refusing to grant the zoning enforcement officer's request for prohibitory and mandatory injunctive relief to cure Waste Management's violation of the height limitation. Because the cases involve the same property and the same zoning regulation, and were tried together before the trial court, oral argument was consolidated before this court and we resolve both cases jointly in this opinion.

The trial court found the following facts. Waste Management is the owner of property that is located in an industrial zone in New Milford, on which it operates a solid waste landfill. The landfill was established by Waste Management's predecessor in title prior to the 1971 adoption of zoning regulations, which prohibited a landfill in an industrial zone. Because the landfill existed prior to the adoption of the zoning regulations, it became a permitted nonconforming use. Waste Management's predecessor subsequently received a permit from the DEP to operate the landfill to a maximum height of ninety feet.

In 1985, Waste Management applied to the DEP for a modified permit, pursuant to General Statutes § 22a-208a (d),[2] that would allow it to increase the max-

---

[2] General Statutes § 22a-208a (d) provides: "No solid waste facility which holds a permit to construct shall be altered on and after June 16, 1985, until the proposed plan, design and method of operation of the altered facility have been filed with the commissioner and approved by him by issuance of a modified permit. For the purposes of this section and sections 22a-208, 22a-208b, 22a-220a, 22a-225 and 22a-226, 'alter' means (1) to change to any substantive degree the approved design, capacity, process or operation of a solid waste facility holding a permit to construct, and includes, but is not limited to, changes in the approved capacity or composition of solid waste disposed of, processed, reduced, stored or recycled at the facility or (2) to change to any substantive degree the existing design, capacity, volume, process or operation of a solid waste facility not holding a permit to construct and includes, but is not limited to, changes in the volume or composition of solid waste disposed, stored, processed, reduced or recycled at the facility."

imum height of the landfill from 90 to 190 feet. In compliance with § 22a-209-4 (b) (3) of the Regulations of Connecticut State Agencies, Waste Management published notice that it had applied for the modified permit and invited the public to comment thereon. No comments were received from New Milford town officials or from the commission, and on February 24, 1987, the DEP issued the modified permit. No appeal was taken from the granting of the permit.

On October 18, 1988, the commission held a properly noticed public hearing to consider an amendment to the New Milford zoning regulations that would limit any landfill or solid waste facility existing as a nonconforming use within New Milford to a maximum height of ninety feet (height limitation). No action was taken on the proposed amendment until the commission voted to adopt it on November 14, 1989.

Waste Management appealed to the trial court from the adoption of the height limitation by the commission. In the administrative appeal, Waste Management claimed that: (1) the height limitation was preempted by § 22a-207 et seq. and by the DEP permit; (2) the commission had waived its rights to restrict the height of the landfill when it failed to exercise its statutory right to appeal from the grant of the DEP permit in 1987; (3) the height limitation prohibited the continuance of Waste Management's nonconforming use, thus constituting an illegal amortization; and (4) the height limitation effected a taking of Waste Management's property through inverse condemnation in violation of article first, § 11, of the Connecticut constitution.[3] The trial court bifurcated the issues, hearing the first three issues separately from the taking issue.

[3] Waste Management also claimed that the adoption of the amendment more than one year after the close of the public hearing and without publication of an agenda of the commission's intent to vote on the amendment violated its right to procedural due process. Waste Management does not contest in this court the trial court's determination that this claim was without merit.

At the conclusion of the first part of the bifurcated trial, the court rejected each of Waste Management's claims. Specifically, the court determined that our holding in *Beacon Falls* v. *Posick*, 212 Conn. 570, 563 A.2d 285 (1989), in which we concluded that the act preludes local zoning regulations only to the extent that they conflict with a DEP permit regulating land owned by the Connecticut Resources Recovery Authority, was dispositive of Waste Management's preemption claim. The court further concluded that the adoption of the height limitation was not precluded by the commission's failure to appeal from the issuance of the DEP permit. Finally, the court concluded that the height limitation did not constitute an illegal amortization of Waste Management's nonconforming use because it was a properly enacted reasonable regulation that furthered a public interest.

After the first part of the trial, but preceding the trial on the taking issue, the zoning enforcement officer, Robert Bauer,[4] brought the enforcement action seeking a permanent injunction to prohibit Waste Management from violating the ninety foot height limitation. It was uncontested that Waste Management was in violation of the height limitation at that time.

Following a trial on the taking issue, the court determined that "[o]nce the landfill reached ninety feet in March, 1993, application of the amended zoning regulation constituted a taking of [Waste Management's] property. . . . [The commission's] amendment to the zoning regulations is in violation of the Connecticut constitution and [is] therefore illegal." (Citation omitted.) Accordingly, the trial court sustained Waste Management's administrative appeal and remanded the case to the commission to revoke the height limitation. On

---

[4] At the time the enforcement action was initiated, Bauer was the zoning enforcement officer. His successor, Loretta Brickley, was substituted as the plaintiff during the pendency of the action.

the basis of this holding, the court contemporaneously also denied the injunctive relief sought in the enforcement action. In a subsequent articulation, the trial court found that Waste Management's use of the landfill was a permissible intensification of its prior use. Quoting *Hall* v. *Brazzale*, 31 Conn. App. 342, 349, 624 A.2d 916, cert. denied, 227 Conn. 905, 632 A.2d 691 (1993), the trial court concluded that " '[m]ore of the same . . . cannot be the basis for a finding of an unlawful expansion of a prior existing nonconforming use.' " The court also concluded that the zoning enforcement officer was estopped from enforcing the height limitation because the zoning enforcement officer had approved plans for a gas cogeneration facility, and a landfill inspector was aware that Waste Management had begun construction of the cogeneration facility in reliance on its use of the DEP permit. These appeals and this cross appeal followed.[5]

In its appeal from the trial court's judgment in the administrative appeal, the commission raises several challenges to the court's determination that the height limitation constitutes an unconstitutional taking of Waste Management's property. Specifically, the commission claims that the trial court improperly: (1) concluded that Waste Management had a constitutionally protected property interest in the vertical expansion of the landfill by virtue of the 1987 DEP permit; (2) concluded that the height limitation effected a practical confiscation of Waste Management's property by rendering that property without any economic value; and (3) applied a balancing test to find that the application of the height limitation effected an unconstitutional taking of Waste Management's property. In its

---

[5] The commission and the zoning enforcement officer appealed and Waste Management cross appealed from the judgments of the trial court to the Appellate Court, and we transferred the appeals and cross appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

cross appeal from the administrative appeal, Waste Management claims that the trial court improperly: (1) failed to conclude that the commission had waived any opportunity to seek height restrictions on the landfill by its failure to appeal from the DEP's granting of the expansion permit; and (2) failed to conclude that the height limitation was preempted by the DEP permit and state law and regulations.

In her appeal from the trial court's judgment in the enforcement action, the zoning enforcement officer claims that the trial court improperly: (1) concluded that the height limitation constituted a taking of Waste Management's property; (2) concluded that Waste Management's continued use of the landfill constituted a lawful intensification of its preexisting landfill use; (3) failed to consider whether the vertical expansion of the landfill violated the commission's regulation limiting the maximum height of structures to forty feet; (4) concluded that the zoning enforcement officer was estopped from enforcing the zoning regulations to restrain the vertical expansion of the landfill; and (5) abused its discretion in refusing to grant the prohibitory and mandatory injunctive relief sought by the zoning enforcement officer.

"Ordinarily, '[c]onstitutional issues are not considered unless absolutely necessary to the decision of a case." *State* v. *Torres*, 230 Conn. 372, 382, 645 A.2d 529 (1994). Because resolution of any of the zoning or preemption issues in favor of Waste Management would resolve these appeals in its favor, we address these issues first.

I

We first address the two issues raised by Waste Management's cross appeal. Waste Management first claims that the commission waived its opportunity to restrict the height of the landfill by its failure to appeal

from the granting of the DEP permit, which had authorized the expansion of the landfill to 190 feet. Waste Management argues that, by failing to take a timely appeal from the DEP's action, the commission was precluded from "challeng[ing] the terms of the modified DEP permit." We disagree with Waste Management's characterization of the commission's actions and its reading of our precedent.

"Where a party has a right of appeal from a decision of an administrative agency, he may not instead bring an independent action to test the very issue which the appeal was designed to test. *Country Lands, Inc.* v. *Swinnerton,* 151 Conn. 27, 33, 193 A.2d 483 (1963)." *Powers* v. *Ulichny,* 185 Conn. 145, 147, 440 A.2d 885 (1981). Waste Management would have us extend this principle to prevent an authorized municipal body from enacting a regulation because it might have been able to achieve the same end through an administrative appeal. We decline to do so.

Even if we assume, without deciding, that the commission could have appealed from the DEP's grant of the expansion permit,[6] the commission would have been precluded from bringing an independent legal action to challenge the DEP permit. For example, under such circumstances, the commission would not have been permitted to initiate an action seeking an injunction against the DEP's grant of the permit or against Waste Management's use thereof. This does not mean, however, that the commission was precluded from acting within its authorized legislative function by enacting valid zoning regulations. Waste Management's argument assumes that the commission's enactment of the height limitation was a challenge to the terms of the

---

[6] The commission claims that it did not have a right to appeal from the grant of the DEP permit. We need not resolve this issue because of our conclusion that the commission's legislative function was unaffected by its role, if any, in the DEP proceedings that led to the grant of the DEP permit.

DEP permit. Although the imposition of the height limitation resulted in a greater restriction on the landfill than that imposed by the DEP permit, the height limitation is not a collateral legal challenge to the validity of the DEP permit. Our precedent precludes resort to the courts by a party who fails to take advantage of the opportunity for redress through an appeals process. It does not, however, strip a legislative body of its power to address the same subject matter through a valid exercise of its police powers. Even if the commission had unsuccessfully appealed from the granting of the DEP permit, it would not have been precluded from enacting the height limitation. Enactment of the height limitation was authorized by the commission's delegated legislative authority, and its role as litigant, or potential litigant, is irrelevant to such functioning, even if the same ends might have been achieved thereby.

Waste Management next argues that the height limitation was preempted by the DEP permit and by the state's Solid Waste Management Act. We disagree.

"[A] local ordinance is preempted by a state statute whenever the legislature has demonstrated an intent to occupy the entire field of regulation on the matter . . . or . . . whenever the local ordinance irreconcilably conflicts with the statute. . . . Whether an ordinance conflicts with a statute or statutes can only be determined by reviewing the policy and purposes behind the statute and measuring the degree to which the ordinance frustrates the achievement of the state's objectives. . . . (Citations omitted.)" (Internal quotation marks omitted.) *Helicopter Associates, Inc.* v. *Stamford*, 201 Conn. 700, 705, 519 A.2d 49 (1986); *Shelton* v. *Commissioner of Environmental Protection*, 193 Conn. 506, 517, 479 A.2d 208 (1984); *Dwyer* v. *Farrell*, 193 Conn. 7, 12–14, 475 A.2d 257 (1984).

The language of General Statutes § 22a-208a (b)[7] and the circumstances surrounding its enactment indicate that the legislature did not intend to "occupy the entire field of regulation" with regard to solid waste facilities. That section expressly provides in part that "nothing in this chapter [entitled Solid Waste Management] . . . shall be construed to limit the right of any local governing body to regulate, through zoning, land usage for solid waste disposal." General Statutes § 22a-208a (b). "It is useful first to consider the origin of [§ 22a-208a (b)]. In *Colchester* v. *Reduction Associates, Inc.*, 34 Conn. Sup. 177, 184–85, 382 A.2d 1333 (1977), the Court of Common Pleas for New London county held that the zoning regulations of the town of Colchester could not prohibit the disposal of unbaled waste within the town when the DEP had issued a permit approving the defendant's disposal activities because state law had preempted the local regulations. In response to the court's holding in *Colchester* and to several other unpopular regional waste disposal proposals, the legislature amended § 22a-208 (c) [now § 22a-208a (b)] to provide that a DEP solid waste disposal permit did not override local zoning." *Shelton* v. *Commissioner of Environmental Protection*, supra, 193 Conn. 516–17.

Waste Management argues that, notwithstanding our holding in *Shelton* that the legislature did not intend to preempt local zoning regulation of solid waste dis-

[7] General Statutes § 22a-208a (b) provides: "No solid waste facility shall be built or established and no solid waste facility without a permit to construct shall be altered after July 1, 1971, until the plan, design and method of operation of such facility have been filed with the department and approved by the commissioner by the issuance of a permit to construct, provided, nothing in this chapter or chapter 446e shall be construed to limit the right of any local governing body to regulate, through zoning, land usage for solid waste disposal. The commissioner shall send a written notification of any application for a permit to construct to the chief elected official of each municipality in which the proposed facility is to be located, within five business days of the date on which any such application is filed."

posal, "it is clear from other statutes that the legislature has reserved jurisdiction over operational and environmental aspects of established waste disposal facilities to the DEP, to the exclusion of local zoning control." Waste Management claims that because § 22a-208a (b), which concerns the permit process for the construction of new facilities, contains a reservation of local zoning authority, whereas § 22a-208a (d), which concerns alterations to existing facilities, does not contain a parallel provision reserving the authority of local zoning power, "the statutes and regulations evince an intent to let municipalities say where waste may be disposed, while leaving how this may occur to the DEP." We disagree with the narrow meaning Waste Management ascribes to the statutory language.

Waste Management's assertion that the reservation of powers to local zoning control contained in § 22a-208a (b) does not apply equally to § 22a-208a (d) ignores the language of the reservation of zoning authority in subsection (b): "*[N]othing in this chapter* or chapter 446e shall be construed to limit the right of any local governing body to regulate, through zoning, land usage for solid waste disposal." (Emphasis added.) Waste Management would have us read "nothing in this *chapter*" to mean "nothing in this *subsection*." To the contrary, we read the provision of § 22a-208a (b), in accordance with its language, to apply to all the provisions of the chapter[8] and to mean that the zoning authority of a town may be brought to bear on solid waste facilities located within its borders. This is not to suggest that regulation beyond permissible zoning authority would not be preempted by the solid

---

[8] The reservation of zoning authority by its terms also applies to chapter 446e, the Solid Waste Management Services Act. Certain properties owned by the Connecticut Resources Recovery Authority are statutorily exempt from local zoning authority. See General Statutes § 22a-282; *Beacon Falls* v. *Posick,* supra, 212 Conn. 576–81.

waste management chapter of the general statutes; *Shelton* v. *Commissioner of Environmental Protection*, supra, 193 Conn. 515–16 ("in the absence of [§ 22a-208a (b)], statewide regulation of solid waste disposal had preempted . . . zoning regulations"); nor is it to suggest that land use regulation through zoning that is in conflict with state statutes and regulations is permissible. A height restriction, however, does not go beyond New Milford's zoning authority. See General Statutes § 8-2.[9] There is nothing in either the language, the legislative history or the circumstances surrounding the enactment of the statutory language to suggest a more cramped interpretation.

We are also unconvinced that the height restriction is preempted because it irreconcilably conflicts with the statutes or the permit itself. "A test frequently used to determine whether a conflict exists is whether the ordinance permits or licenses that which the statute forbids, or prohibits that which the statute authorizes; if so, there is a conflict. If, however, both the statute and the ordinance are prohibitory and the only difference is that the ordinance goes further in its prohibition than the statute, but not counter to the prohibition in the statute, and the ordinance does not attempt to authorize that which the legislature has forbidden, or forbid that which the legislature has expressly authorized, there is no conflict." *Aaron* v. *Conservation Commission*, 183 Conn. 532, 544, 441 A.2d 30 (1981). Compliance with the commission's maximum height of ninety feet a fortiori implies compliance with DEP's authorized maximum height of 190 feet. Waste Management would have us read the DEP permit to authorize the landfill to reach the 190 foot limit; rather, we

[9] General Statutes § 8-2 provides in relevant part: "(a) The zoning commission of each city, town or borough is authorized to regulate, within the limits of such municipality, the height, number of stories and size of buildings and other structures . . . ."

understand the permit to allow the landfill to go *no higher* than 190 feet, but to allow any level below that. In this sense, the DEP permit is prohibitory and the height limitation imposed by the commission, therefore, merely goes further in its prohibition than the DEP permit. The height limitation imposed by the commission does not authorize what the permit forbids, or forbid what the permit expressly authorizes.[10] Consequently, the height limitation does not irreconcilably conflict with the permit and statutes.

## II

### A

We next consider the zoning enforcement officer's claim that the trial court improperly concluded that the vertical expansion of the landfill was a permissible intensification of a nonconforming use. Although our analysis differs from that offered by the zoning enforcement officer, we agree that Waste Management has not shown that its current use is within the scope of a valid nonconforming use.

The zoning enforcement officer claims that the trial court failed to consider the factors set out in *Zachs* v. *Zoning Board of Appeals*, 218 Conn. 324, 589 A.2d 351 (1991), to determine whether Waste Management's activities fell within the scope of a prior nonconforming use. "In deciding whether the current activity is within the scope of a nonconforming use consideration should be given to three factors: (1) the extent to which

---

[10] Moreover, the language of the DEP permit expressly prohibits Waste Management from operating its landfill in contravention of local zoning regulations. "This permit is subject to and in no way derogates any present or future property rights or powers of the State of Connecticut and conveys no property rights in real estate or material nor any exclusive privileges and is *further subject to any and all public and private rights and to any federal, state or local laws or regulations pertinent to the property or activity affected hereby.*" (Emphasis added.) Furthermore, this language eschews the notion that it creates any property rights in the permittee.

the current use reflects the nature and purpose of the original use; (2) any differences in the character, nature and kind of use involved; and (3) any substantial difference in effect upon the neighborhood resulting from differences in the activities conducted on the property." Id., 332. Taking these factors into account, the zoning enforcement officer claims, Waste Management's expansion beyond ninety feet would not qualify as a permissible intensification within the scope of their valid nonconforming use. The zoning enforcement officer claims that the baseline against which we should compare Waste Management's current use of the property is its use when the landfill became a nonconforming use in 1971.

Waste Management, however, argues that to determine whether its use of the landfill space beyond ninety feet was a permissible intensification of its nonconforming use, we should look to "March, 1993, because that is when the landfill reached the capacity permitted by the height limit. The relevant issue is whether the extension from 90 feet to 190 feet violates the factors set forth in the *Zachs* case and similar holdings." Using the condition of the landfill in 1993 as our baseline, Waste Management argues, we must conclude that the continued expansion beyond ninety feet does not constitute a change in use under the test set forth in *Zachs*. We disagree.

We agree with Waste Management that, because the commission enacted a ninety foot height limitation, Waste Management's use of the landfill to that height is expressly permitted by the New Milford zoning regulations. The town's enactment of the ninety foot height limitation allows a nonconforming landfill to reach that height, and it is therefore inconsistent for the town to assert that a lower limit is applicable to Waste Management's nonconforming landfill. Moreover, we also agree with Waste Management that the resolution of the

intensification issue does not depend on the 1971 zoning ordinance and the condition of the landfill at that time.

The zoning enforcement officer's complaint in the enforcement action was in two counts. In the first count, the zoning enforcement officer alleged that Waste Management was in violation of the height limitation enacted in 1989, because the landfill exceeded the maximum vertical height of ninety feet. In the second count, the zoning enforcement officer alleged that Waste Management had violated zoning regulations prohibiting the enlargement, increase or extension of any nonconforming use or structure because the expansion of the landfill above ninety feet as authorized by the DEP permit constituted a change in character of Waste Management's use of its property. Thus, the zoning enforcement officer's complaint was limited by its terms to contesting the expansion of the landfill above ninety feet. The first count explicitly was so limited, and the second count alleged only that the expansion from a maximum of ninety feet constituted a change in character. The complaint did not allege that Waste Management had illegally expanded its nonconforming use during the time period between 1971, when the landfill became a nonconforming use, and the time at which the landfill exceeded ninety feet in height, nor did it allege a violation of the zoning ordinance's forty foot height limitation for structures.[11]

We agree, therefore, that in the context of the claims raised by the zoning enforcement officer, the proper comparison is between Waste Management's use of the property to the extent permitted by the zoning regulations, namely, height expansion to ninety feet, and its use when the enforcement action was brought

[11] Accordingly, we conclude that the trial court did not improperly fail to consider whether the vertical expansion of the landfill violated the town's forty foot height limitation on structures.

against it. The gravamen of Waste Management's argument is that the nonconforming use analysis in these appeals does not concern their valid nonconformity with the 1971 zoning regulation, but rather pertains to their nonconformity with the 1989 height limitation.

We disagree, however, with Waste Management's ultimate conclusion. Because the zoning enforcement officer's complaint alleged that Waste Management was in violation of the zoning regulations in that it had exceeded the ninety foot height limitation, the sole issue was whether the landfill's continued growth beyond ninety feet was within the scope of Waste Management's nonconforming use of the property with respect to the ninety foot height limitation (i.e., the 1989 regulation). In its fifth special defense to the enforcement action, Waste Management claimed that it had "established and exercised a right to fill its landfill above [90 feet], and up to [190 feet], *by virtue of its 1987 DEP permit* and the lack of any local zoning prohibition . . . prior to the adoption . . . of the height limitation at issue, and thus [Waste Management] has a vested nonconforming right to fill to elevation granted by the DEP permit." (Emphasis added.) According to Waste Management, "[w]hen the height limitation was adopted in November, 1989, the DEP permit was the firmly-established basis of Waste Management's use." We disagree.

Waste Management cites *Helicopter Associates, Inc.* v. *Stamford*, supra, 201 Conn. 700, to support this claim. In *Helicopter Associates, Inc.*, we determined that, although the plaintiff had a valid nonconforming use as a heliport, the scope of that use was restricted by the rights of the plaintiff that *legally* existed at the time the heliport became nonconforming. Waste Management misreads the case, however, when it argues that a legally existing right is sufficient to cre-

*ate* a nonconforming use, rather than merely to define its *scope*. In *Helicopter Associates, Inc.*, we determined that the property at issue had been used as a commercial heliport, and, therefore, that it was a nonconforming use. The scope of that nonconforming use was constrained by the fact that the plaintiff did not have a license and therefore was limited by statute to thirty-six flights per year. We stated explicitly that "not only must the premises have been adapted for a given purpose, *but the premises must also have been employed within that purpose.*" (Emphasis added.) Id., 714.

Section 8-2 "protects the right of a user to continue the same use of the property *as it existed before the date of the adoption of the zoning regulations*; *Helbig* v. *Zoning Commission*, 185 Conn. 294, 306, 440 A.2d 940 (1981) . . . ." (Emphasis added; internal quotation marks omitted.) *Essex Leasing, Inc.* v. *Zoning Board of Appeals*, 206 Conn. 595, 607, 539 A.2d 101 (1988). "Such a use is permitted because its existence *predates* the adoption of the zoning regulations. *Adolphson* v. *Zoning Board of Appeals*, 205 Conn. 703, 710, 535 A.2d 799 (1988). It is well established that [t]o be a nonconforming use the use must be actual. It is not enough that it be a contemplated use [or] that the property was bought for the particular use. The property must be so utilized as to be irrevocably committed to that use. . . . *Lebanon* v. *Woods*, 153 Conn. 182, 197, 215 A.2d 112 (1965); see also *Helicopter Associates, Inc.* v. *Stamford*, [supra, 201 Conn. 713]; *Corsino* v. *Grover*, 148 Conn. 299, 308, 170 A.2d 267 (1961). The [property owner] bears the burden of proving the existence of a nonconforming use. *Pleasant View Farms Development, Inc.* v. *Zoning Board of Appeals*, [218 Conn. 265, 272, 588 A.2d 1372 (1991)." (Emphasis added; internal quotation marks omitted.) *Francini* v. *Zoning Board of Appeals*, 228 Conn. 785, 789, 639 A.2d 519 (1994).

Waste Management did not plead or argue in the trial court that it had operated the landfill at a height of greater than ninety feet at the time the height restriction was enacted, and, therefore, it failed to establish a nonconforming use as to that regulation. The degree, if any, to which the DEP permit would have given Waste Management a right to expand beyond ninety feet[12] is irrelevant to determine the extent of a nonconforming use in the absence of proof of the exercise of that legal right.[13]

Because it failed to establish a nonconforming use as to the 1989 height limitation, the claims of Waste Management that are dependent on its use being nonconforming with respect to that regulation must fail. In other words, because Waste Management did not allege or prove that the landfill was over ninety feet in height in 1989 when the ninety foot height limitation was adopted, it did not establish a nonconforming use with respect to the height limitation. Waste Management's arguments that the continued growth of the landfill was a permissible intensification of a nonconforming use or, alternatively, was permissible under the natural expansion doctrine, therefore, cannot succeed, because both claims are predicated on the landfill being a nonconforming use with respect to the height limitation.

[12] As noted previously, the language of the permit itself conditions the rights thereunder to conformity with local laws and regulations. See footnote 10.

[13] Although there is some evidence in the record that a portion of the landfill may have exceeded a height of ninety feet at the time of the enactment of the height limitation in 1989, Waste Management neither alleged nor sought to prove that this was the case, but rather relied on the DEP permit as the sole basis for its nonconforming use. "[O]rdinarily we decide the case before us on the basis on which it was tried, briefed and argued; *Centerbrook, Architects & Planners* v. *Laurel Nursing Services, Inc.,* 224 Conn. 580, 590 n.5, 620 A.2d 127 (1993); rather than on a basis on which the [party] did not rely and to which the [other party] had no opportunity to respond." *Barrett* v. *Danbury Hospital,* 232 Conn. 242, 259–60 n.11, 654 A.2d 748 (1995).

## B

Alternatively, Waste Management claims that the height limitation, if enforced, would constitute an illegal amortization of its nonconforming use of its property as a landfill. We disagree.

Amortization "requires nonconforming uses to be terminated at the expiration of a specified length of time." *James J. F. Loughlin Agency, Inc.* v. *West Hartford*, 166 Conn. 305, 309 n.3, 348 A.2d 675 (1974). Because amortization would conflict with § 8-2, which " 'protects the "right" of a user to continue the same use of the property as it existed before the date of the adoption of the zoning regulations' "; *Essex Leasing, Inc.* v. *Zoning Board of Appeals*, supra, 206 Conn. 607; amortization is prohibited. *James J. F. Loughlin Agency, Inc.* v. *West Hartford*, supra, 311. At issue, therefore, is whether the height limitation imposed by the commission abrogates Waste Management's right to its nonconforming use as a landfill. We agree with the conclusion of the trial court that the height regulation does not amortize Waste Management's nonconforming use.

Regulation of a nonconforming use does not, in itself, abrogate the property owner's right to his nonconforming use. We agree with the reasoning of Judge Joseph Flynn in a recent Superior Court decision: "A town is not prevented from regulating the operation of a nonconforming use under its police powers. Uses which have been established as nonconforming uses are not exempt from all regulation merely by virtue of that status. It is only when an ordinance or regulatory act abrogates such a right in an unreasonable manner, or in a manner not related to the public interest, that it is invalid. *Petruzzi* v. *Zoning Board of Appeals*, 176 Conn.

479, 483–84, 408 A.2d 243 (1979); *Lampasona* v. *Planning & Zoning Commission*, 6 Conn. App. 237, 239, 504 A.2d 554 (1986)." *Massimo* v. *Planning Commission*, 41 Conn. Sup. 196, 203, 564 A.2d 1075 (1989).

The height regulation imposed by the commission is squarely in accord with zoning principles. "It is a general principle in zoning that nonconforming uses should be abolished or reduced to conformity as quickly as the fair interest of the parties will permit. In no case should they be allowed to increase. *Salerni* v. *Scheuy*, 140 Conn. 566, 570, 102 A.2d 528 (1954); see also *Essex Leasing, Inc.* v. *Zoning Board of Appeals*, [supra, 206 Conn. 607] (the goal of zoning is to abolish nonconforming uses as quickly as justice will tolerate). While a mere increase in the amount of business done pursuant to a nonconforming use is not an illegal expansion of the original use, a change in the character of a use . . . does constitute an unlawful extension . . . . *Helicopter Associates, Inc.* v. *Stamford*, [supra, 201 Conn. 716]." (Internal quotation marks omitted.) *Connecticut Resources Recovery Authority* v. *Planning & Zoning Commission*, 225 Conn. 731, 740, 626 A.2d 705 (1993).

We note that the nonconforming use of land as a landfill presents a unique problem within our jurisprudence, due to the dichotomy we have recognized between nonconforming structures and nonconforming uses. Whereas a nonconforming structure cannot be increased in size in violation of zoning ordinances, i.e., nonconforming additions may not be made to the nonconforming structure, we have recognized that certain changes in nonconforming uses represent permissible intensifications within the scope of the valid nonconforming use. See, e.g., *Zachs* v. *Zoning Board of Appeals*, supra, 218 Conn. 324. A landfill is sui generis, in that it presents the problem of a nonconforming use

that, by its continued use, grows in size as well.[14] If treated strictly as a structure, a nonconforming landfill would be permitted merely to exist on the land, but could not be used for additional waste disposal after it became nonconforming. If treated strictly as a use, however, conceivably the landfill could grow in size indefinitely, as long as the amount of activity on the landfill remained fairly constant. Neither result is reasonable or satisfactory within our zoning precepts. To treat the landfill solely as a structure would violate § 8-2, while to treat it solely as a use would disregard our frequent admonition " 'that nonconforming uses should be abolished or reduced to conformity as quickly as the fair interest of the parties will permit.' " *Connecticut Resources Recovery Authority* v. *Planning & Zoning Commission*, supra, 225 Conn. 740. For the property owner's right to operate his landfill as a nonconforming use to be meaningful, he must be permitted reasonable continued use after the landfill becomes nonconforming. Similarly, for the zoning authority's regulation of the size of the landfill mass to have meaning, it must be permitted to place reasonable limits on the property owner's continued use.

Although the height limitation, by its nature, would prevent Waste Management from continuing to deposit refuse on its property, in light of these observations, we cannot conclude that this restriction represents an amortization of its nonconforming use as a landfill. The nonconforming use enjoyed by Waste Management has two components: the continuing deposit of refuse and the storage of refuse. Although the height regulation prospectively abrogated the first component, the sec-

---

[14] In this regard, we note that the holding of the Appellate Court in *Hall* v. *Brazzale*, supra, 31 Conn. App. 349, is inapt under these circumstances. The conclusion that "[m]ore of the same . . . cannot be the basis for a finding of an unlawful expansion of a prior existing nonconforming use"; id., 349; can only be read to apply where it is more of the same *use*, not more of the same in the physical sense.

ond continues unimpeded. Moreover, although we need not delineate in this case the precise height at which the landfill crossed the proverbial line, we conclude that the extent of Waste Management's use, namely, the operation of a landfill occupying seventy acres and ninety feet in height, is of a different character than its use when it became nonconforming.

It is undisputed on appeal that at the time the landfill became nonconforming, it occupied approximately nine acres. Although we recognize that the landfill owner's profit results primarily from the depositing of refuse and not from its subsequent storage, the zoning regulations prohibiting the use of property as a landfill are at least as much concerned with the storage, i.e., the landfill mass, as with the continued deposit of refuse, and the town's interest in reasonably regulating that mass must be accommodated. Although it would be an amortization of the nonconforming use for the commission to require the removal of the landfill mass, because that would force Waste Management to bring its property into conformity and strip it of its nonconforming use entirely, we agree with the determination of the trial court that the commission's enactment of the height limitation constituted a reasonable regulation, enacted "in accordance with New Milford's land use laws, as well as with the town's best interests in mind." We conclude, therefore, that Waste Management's right to its nonconforming use was not unreasonably abrogated by the enactment and enforcement of the height limitation.

### III

The zoning enforcement officer next asserts that the trial court improperly concluded that she was estopped from enforcing the height restriction. The gravamen of her claim is that the silence of municipal officials under the circumstances of this case was insufficient to create municipal estoppel. We agree.

The following additional facts are necessary to resolve this claim. The trial court determined that the zoning enforcement officer had reviewed Waste Management's plans to construct a gas cogeneration system at the landfill and had noted that the plans complied with the regulations for the industrial zone. Additionally, the trial court determined that, although some expenditure would have been necessary even if the landfill operated at or below ninety feet, the extent of the investment made by Waste Management was related to Waste Management's perceived ability to expand the landfill on the basis of the DEP permit. There was no indication at trial, however, that the zoning enforcement officer was aware of this fact at the time he reviewed the plans. The trial court also determined that the town had a landfill inspector on the landfill site for more than twelve years. The trial court found, therefore, that the commission was aware of Waste Management's reliance on the DEP permit "at least from the date of [its] application to the Siting Council for the gas cogeneration system." The court concluded that the "[zoning enforcement officer's] silence with regard to that application coupled with the silence of the landfill inspector induced [Waste Management] to continue with its plans and expenditures pursuant to its modified permit."

"In *Zoning Commission* v. *Lescynski*, 188 Conn. 724, 731–32, 453 A.2d 1144 (1982), we held that, in special circumstances, a municipality may be estopped from enforcing its zoning regulations. We recognized that estoppel always requires proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. *Bozzi* v. *Bozzi*, 177 Conn. 232, 242, 413

A.2d 834 (1979); *Dupuis* v. *Submarine Base Credit Union, Inc.*, 170 Conn. 344, 353, 365 A.2d 1093 (1976); *Pet Care Products, Inc.* v. *Barnett*, 150 Conn. 42, 53–54, 184 A.2d 797 (1962). *Zoning Commission* v. *Lescynski*, supra, 731. In municipal zoning cases, however, estoppel may be invoked (1) only with great caution, (2) only when the resulting violation has been unjustifiably induced by an agent having authority in such matters, and (3) only when special circumstances make it highly inequitable or oppressive to enforce the regulations. *Dupuis* v. *Submarine Base Credit Union, Inc.*, supra, 354. [*Zoning Commission* v. *Lescynski*, supra,] 732; see also 8A McQuillin, Municipal Corporations (3d Rev. Ed. 1976) § 25.349; 9 McQuillin, supra, § 27.56; 3 Rathkopf, Law of Zoning and Planning (4th Ed. 1982) § 45.05[1] [b]." (Internal quotation marks omitted.) *West Hartford* v. *Rechel*, 190 Conn. 114, 121, 459 A.2d 1015 (1983). "Moreover, it is the burden of the person claiming the estoppel to show that he exercised due diligence to ascertain the truth and that he not only lacked knowledge of the true state of things but had no convenient means of acquiring that knowledge." (Internal quotation marks omitted.) *Dupuis* v. *Submarine Base Credit Union, Inc.*, supra, 353.

To summarize, in order for a court to invoke municipal estoppel, the aggrieved party must establish that: (1) an authorized agent of the municipality had done or said something calculated or intended to induce the party to believe that certain facts existed and to act on that belief; (2) the party had exercised due diligence to ascertain the truth and not only lacked knowledge of the true state of things, but also had no convenient means of acquiring that knowledge; (3) the party had changed its position in reliance on those facts; and (4) the party would be subjected to a substantial loss if the municipality were permitted to negate the acts of its agents. See *Zotta* v. *Burns*, 8 Conn. App. 169, 175–76,

511 A.2d 373 (1986); *Greenwich* v. *Kristoff*, 2 Conn. App. 515, 522–23, 481 A.2d 77, cert. denied, 194 Conn. 807, 483 A.2d 275 (1984).

There was no evidence that Waste Management had informed the zoning enforcement officer or the landfill inspector that its plan to construct the gas cogeneration system was based on an expansion of the landfill beyond ninety feet. "The town agents cannot be said to have ratified a use of which they were ignorant . . . especially since it is the [landowner's] burden to show that in undertaking the expansion [it] had exercised due diligence in ascertaining its legality. . . . A proposed improvement's structural compliance with local zoning and building ordinances does not preclude local regulation of the use to which the improvement is subsequently put." *Zoning Commission* v. *Lescynski*, supra, 188 Conn. 732–33.

Moreover, Waste Management knew that the commission was considering enacting the height limitation when it sought approval for the gas cogeneration facility, and its construction of the facility occurred after the enactment of the height limitation and during the pendency of its administrative appeal. Even if the silence of the town officials could be construed as having been intended to induce Waste Management to believe that it would be permitted to expand the landfill beyond ninety feet, and to act on that belief, Waste Management not only could have discovered the truth, which was that the town planned to prohibit expansion above ninety feet, but it had actual knowledge of that fact before it took the actions that the court determined gave rise to its estoppel claim. Waste Management's claim that it relied on the silence of these town officials to conclude that the town would not impede the expansion of the landfill beyond ninety feet while, at the same time, it was embroiled in litigation contesting the town's plan to effect just such a limit, is sim-

ply untenable. Waste Management cannot invoke municipal estoppel on the basis that the town's agents induced in it a belief that it could expand the landfill while at the same time Waste Management was fighting the adoption of the height limitation and, subsequently, the validity of the height limitation. We conclude, therefore, that Waste Management did not establish the elements necessary for the invocation of municipal estoppel.

## IV

The commission and the zoning enforcement officer argue that the trial court improperly determined that the height limitation effected a taking of Waste Management's property without compensation in violation of article first, § 11, of the Connecticut constitution. Specifically, they argue that the trial court improperly: (1) concluded that Waste Management had a constitutionally protected property interest in the vertical expansion of the landfill by virtue of the DEP permit; (2) concluded that the height limitation effected a practical confiscation of Waste Management's property by rendering that property without any economic value; and (3) applied a balancing test to find that the application of the height limit effected an unconstitutional taking. We conclude that the height limitation did not unconstitutionally take Waste Management's property.

Both the fifth amendment to the United States constitution and article first, § 11, of our state constitution provide that private property shall not be taken for public use without just compensation therefor. Waste Management brought its claim of inverse condemnation[15] only under the Connecticut constitu-

---

[15] "Inverse condemnation should be distinguished from eminent domain. Eminent domain refers to a legal proceeding in which a government asserts its authority to condemn property. *United States* v. *Clarke*, 445 U.S. 253,

tion, and, therefore, we limit our analysis to that provision.[16]

"As the United States Supreme Court has observed, whether a claim that a particular governmental regulation or action taken thereon has deprived a claimant of his property without just compensation is an 'essentially ad hoc factual inquir[y].' *Penn Central Transportation Co.* v. *New York City*, 438 U.S. 104, 124, 98 S. Ct. 2646, 57 L. Ed. 2d 631 (1977), reh. denied, 439 U.S. 883, 99 S. Ct. 226, 58 L. Ed. 2d 198 (1978); see also *Keystone Bituminous Coal Assn.* v. *DeBenedictis*, 480 U.S. 470, 473–74, 107 S. Ct. 1232, 94 L. Ed. 2d 472 (1987); *Pennsylvania Coal Co.* v. *Mahon*, 260 U.S. 393, 413, 43 S. Ct. 158, 67 L. Ed. 322 (1922). Our review of the plaintiff's takings claim is no less fact-dependent." *Gil* v. *Inland Wetlands & Watercourses Agency*, 219 Conn. 404, 406, 593 A.2d 1368 (1991).

Thus, we look to the following additional facts to resolve Waste Management's takings claim. Following the grant of the DEP permit, Waste Management completed, at a cost of approximately three million dollars, a relocation of power lines that had bisected the landfill. Without such a relocation, the landfill could not reach ninety feet in height. According to the testimony

[255–58, 100 S. Ct. 1127, 63 L. Ed. 2d 373] (1980). Inverse condemnation is 'a shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted.' Id., 257." *Agins* v. *Tiburon*, 447 U.S. 255, 258 n.2, 100 S. Ct. 2138, 65 L. Ed. 2d 106 (1980).

[16] Waste Management argues that we must not interpret our state constitution to provide less protection for property owners than the "floor" established by the federal constitution. Neither Waste Management, the commission nor the zoning enforcement officer argues that our state constitution provides different protection for property owners from that provided by the fifth amendment's takings clause. Moreover, we have never interpreted the two provisions to require different analysis. We therefore assume for the purposes of this appeal that article first, § 11, provides the same protection for property owners as that provided for under its federal analogue.

of Peter J. Richer, Waste Management's environmental manager for the landfill, construction on the relocation began in the fall of 1986, prior to approval of the DEP permit, and the planning for the relocation occurred prior to that time.

Additionally, Waste Management built a gas management system to control gas migration from the landfill. Although some system would have been necessary even in the absence of the DEP permit, the system Waste Management designed and installed went beyond what was necessary to control odors and to comply with air quality standards. Waste Management spent over one million dollars to install and build the gas collection and electricity cogeneration system. The trial court determined that the commission was a party to the proceedings before the Connecticut Siting Council that resulted in approval of the electricity generation system, and that Waste Management would not have constructed the facility if the landfill was subject to the ninety foot height limitation. Richer testified, however, that at the time Waste Management applied to the Siting Council for approval of this project and applied for all the other permits associated with the facility, Waste Management knew that the commission was considering a height restriction on the landfill, and, indeed, already had enacted such a height limitation that had later been withdrawn because of a notice problem. Waste Management chose to proceed with the facility notwithstanding the pending regulation. Moreover, the building permit for the facility was not issued until November, 1990, more than one year after the commission had adopted the height limitation. Construction of the gas collection system itself was started sometime in 1986 and continued until 1990, the majority of construction having taken place in 1989, at which time Waste Management was aware that the commission was considering enacting the height limitation.

The trial court also determined that the height limitation would reduce the capacity of the landfill by 2.95 million cubic yards, which would result in $27 million less revenue for the landfill than if it were permitted to reach 190 feet. Jeffrey P. Heidtman, a consultant to Waste Management, testified that the total capacity of the landfill, if subject to the height limitation, was 7.04 million cubic yards, and that the actual volume at the time the height limitation was enacted was 5.64 million cubic yards. The court determined that the value of the property itself was diminished by the height limitation by between $23 million and $30.4 million. The court further concluded that the property itself was unsuitable for other industrial purposes, and could only be used as open space if it could not be used as a landfill in the future.

The trial court also determined that Waste Management had based certain capital expenditures for construction of the gas cogeneration facility, extension of water lines, moving of power lines and construction of a truck wash facility, on its receipt of the DEP permit. On this basis, the court concluded that Waste Management had a reasonable investment-backed expectation that it would continue to operate the landfill until it reached 190 feet. Richer had testified, however, that: (1) the construction of the gas cogeneration facility had not begun until after the height limitation was enacted; (2) the extension of the water line was undertaken with the knowledge that the height limitation was being considered and completed with the knowledge that it had been enacted; (3) the relocation of the power lines had begun before the DEP permit was granted and was necessary to use the landfill to a ninety foot capacity; and (4) the truck wash facility was planned and constructed with the knowledge that the commission had enacted a height limitation, which had been withdrawn because of a notice problem, and was con-

sidering another such height limitation. After applying a balancing test, the trial court concluded that once the landfill reached ninety feet in height in March, 1993, the height limitation effected a taking.

"As an analytic matter, before a court can review a landowner's claim that he has been deprived of his property without just compensation, the court must first define the property interest that has allegedly been taken. *Keystone Bituminous Coal Assn.* v. *DeBenedictis*, supra, [480 U.S.] 497; F. Michelman, 'Property, Utility, and Fairness: Comments on the Ethical Foundations of "Just Compensation" Law,' 80 Harv. L. Rev. 1165, 1192 (1967)." *Gil* v. *Inland Wetlands & Watercourses Agency*, supra, 219 Conn. 410. "Because our test for regulatory taking requires us to compare the value that has been taken from the property with the value that remains in the property, one of the critical questions is determining how to define the unit of property whose value is to furnish the denominator of the fraction." (Internal quotation marks omitted.) *Keystone Bituminous Coal Assn.* v. *DeBenedictis*, supra, 497. Although ordinarily this is a matter of determining what physical land should be considered as part of the affected parcel for the purpose of takings analysis, in this case the issue has been posed as temporal in nature, namely, whether the takings analysis was properly performed on the basis of the value of the landfill at the time it reached the ninety foot height limitation, or, rather, whether the analysis should have been conducted on the basis of the state of the landfill at the time the height limitation was enacted.

We conclude that this temporal question reduces to a question of physical segmentation of the property at issue. If the analysis is undertaken on the basis of the landfill once it reached the height at which the prohibition came into effect, the analysis would segment the property so that only the portion affected by the regu-

lation, namely, the airspace over ninety feet, enters into the takings calculus. On the other hand, if the analysis is undertaken on the basis of the property as it existed at the time the regulation was enacted, the takings calculus considers the actual effect on the remaining value of the property as a whole. " 'Taking' jurisprudence does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated. In deciding whether a particular governmental action has effected a taking, this Court focuses rather both on the character of the action and on the nature of the interference with rights in the parcel as a whole . . . ." *Penn Central Transportation Co.* v. *New York City*, supra, 438 U.S. 130–31; *Tamm* v. *Burns*, 222 Conn. 280, 289 n.7, 610 A.2d 590 (1992). We conclude, therefore, that the takings analysis should consider the effect of the regulation on the property as it existed at the time the regulation was enacted.

In this light, we first consider Waste Management's claim that the height limitation imposed by the commission effected a practical confiscation of Waste Management's property. The trial court determined that the regulation rendered the property "worthless for landfill purposes and unsalable for industrial uses." Waste Management argues that regardless of the merits of the regulation, because the court determined that the property was rendered worthless, the regulation constituted a taking by practical confiscation. We disagree.

"[W]e have held that zoning reclassifications can constitute an unconstitutional taking when they leave a property owner with *no economically viable use of his land other than exploiting its natural state.*" (Emphasis added.) *Gil* v. *Inland Wetlands & Watercourses Agency*, supra, 219 Conn. 413. Our cases that have found a taking by practical confiscation have involved

situations that required a landowner to leave his property in essentially its natural state. See *Bartlett* v. *Zoning Commission*, 161 Conn. 24, 282 A.2d 907 (1971); *Dooley* v. *Town Plan & Zoning Commission*, 151 Conn. 304, 197 A.2d 770 (1964).[17] Even if Waste Management had been deprived of all future use of its landfill, which it was not,[18] its attempt to characterize its inability to augment its seventy acre, ninety foot high landfill as a practical confiscation only can be described as an attempt to fit a round peg in a square hole. Although our takings jurisprudence recognizes that enactment of a regulation depriving a landowner of all beneficial uses of his land will infringe on reasonable investment-backed expectations and thus constitute a taking, those cases have concerned undeveloped land in its natural state. Those cases are inapposite to this case because, although Waste Management's property was rendered without profitable use after the landfill reached ninety feet in height, it is not the regulation that deprived Waste Management of all beneficial use of its land, but rather it was Waste Management's prior use of its land, namely, the deposit of ninety feet of refuse on that land.

As industrial zoned land, the zoning regulations established by the commission would allow for a multitude of uses on Waste Management's parcel. It is the

[17] Waste Management urges us to adopt the per se takings rule of *Lucas* v. *South Carolina Coastal Council*, 505 U.S. 1003, 112 S. Ct. 2886, 120 L. Ed. 2d 798 (1992), and to apply it in this case. In *Lucas*, the United States Supreme Court held that "categorical treatment [is] appropriate . . . where regulation denies all economically beneficial or productive use of land." Id., 1015.

We do not, however, perceive a difference between what Waste Management calls the per se rule in *Lucas* and our own practical confiscation test. Like our cases in which we have found a practical confiscation, *Lucas* involved a regulation that required the landowner to leave his land in a natural, undeveloped state.

[18] Testimony at trial revealed that at the time the height limitation was enacted, the landfill had unused capacity of 1.4 million cubic yards before it would reach ninety feet in height.

existence of the landfill mass, created by Waste Management, that prevents Waste Management from turning to those beneficial uses and renders additional dumping the only economically profitable use of the land. While we ordinarily think of land as a continuing, reusable asset that retains and may even appreciate in value, use of land as a landfill transforms it into a wasting asset. A practical confiscation occurs when a landowner is prevented from making any beneficial use of its land—as if the government had, in fact, confiscated it. A practical confiscation does not occur when the landowner cannot take advantage of a myriad of uses acceptable under the applicable regulations because of choices the landowner itself has made that limit its land use options.

Because the regulation has not effected a taking by practical confiscation, we next turn to the balancing test we have employed in takings cases. "Short of regulation which finally restricts the use of property for any reasonable purpose resulting in a 'practical confiscation,' the determination of whether a taking has occurred must be made on the facts of each case with consideration being given not only to the degree of diminution in the value of the land but also to the nature and degree of public harm to be prevented and to the alternatives available to the landowner. *Brecciaroli* v. *Commissioner of Environmental Protection*, [168 Conn. 349, 356, 362 A.2d 948 (1975)]; *Horwitz* v. *Waterford*, [151 Conn. 320, 323–24, 197 A.2d 636 (1964)]. The financial effect on a particular owner must be balanced against the health, safety and welfare of the community. *Samp Mortar Lake Co.* v. *Town Plan & Zoning Commission*, 155 Conn. 310, 315–16, 231 A.2d 649 [1967]; *Brecciaroli* v. *Commissioner of Environmental Protection*, supra, 357." (Internal quotation marks omitted.) *Chevron Oil Co.* v. *Zoning Board of Appeals*, 170 Conn. 146, 151, 365 A.2d 387 (1976). Considera-

tion of these factors leads us to conclude that the enactment of the height restriction did not unconstitutionally "take" Waste Management's property.

The financial burden imposed on a landowner by a regulation is measured by the extent to which the regulation interferes with the property owner's reasonable investment-backed expectations of use of the property. *Gil* v. *Inland Wetlands & Watercourses Agency*, supra, 219 Conn. 410–14. A regulation does not constitute a compensable taking if it does not infringe on such reasonable investment-backed expectations. The basis for the trial court's conclusion that a taking had been effected was Waste Management's reliance on the DEP permit and the investments it undertook in reliance thereon. Under the facts of this case, we conclude that the DEP permit did not create a reasonable expectation that Waste Management could expand the landfill beyond ninety feet in height.

The DEP permit expressly limits the reliance the landowner can reasonably place upon its terms. "This permit is subject to and in no way derogates any present or future property rights or powers of the State of Connecticut and *conveys no property rights in real estate or material nor any exclusive privileges and is further subject to any and all public and private rights and to any federal, state or local laws or regulations pertinent to the property or activity affected hereby.*" (Emphasis added.) The permit, by its express terms, did not create a *reasonable* expectation on the part of Waste Management that it had a property right in expansion of the landfill beyond ninety feet notwithstanding the terms of local regulations.[19] Moreover, as

[19] Waste Management argues that this interpretation of the permit language would make the permit revocable at the will of the DEP. We see no merit in this argument. The enactment of a local zoning regulation that limited Waste Management's ability to use its land to the full extent that

discussed above, § 22a-208a (b) expressly provides that the Solid Waste Management Act, pursuant to which the DEP permit was issued, does not limit the right of any local governing body to regulate, through zoning, land usage for solid waste disposal. Whatever expectations Waste Management had to the contrary were not, in the legal sense, reasonable, and are not protected by the takings clause.

The capital investments that Waste Management claims represent investment backing of its expectation for expansion of the landfill do not transform Waste Management's gamble that the commission would not exercise its zoning prerogatives into a reasonable expectation on Waste Management's part. Investment backing is required to show a property owner's reliance on his reasonable expectation; it does not transform speculation into a property interest protected by the takings clause. Moreover, we note that in this case, the facts indicate that the bulk of the investments undertaken by Waste Management took place either before it received the DEP permit or after the commission had enacted the height limitation. In light of our oft repeated maxim that a zoning regulation is entitled to a presumption of validity; see, e.g., *Pollio* v. *Planning Commission*, 232 Conn. 44, 49, 652 A.2d 1026 (1995); *Aaron* v. *Conservation Commission*, supra, 183 Conn. 537; *Connecticut Theatrical Corp.* v. *New Britain*, 147 Conn. 546, 553, 163 A.2d 548 (1960); *Eden* v. *Town Plan & Zoning Commission*, 139 Conn. 59, 62, 89 A.2d 746 (1952); it would be contradictory to allow Waste Management's reliance on being able to invalidate the regulation at issue in the administrative appeal to be recognized as a con-

the DEP would allow does not constitute a revocation of the DEP permit. It is, instead, a complementary regulation, which, as we have discussed above, does not contradict the terms of the DEP permit, but, indeed, was anticipated by it.

stitutionally protected reasonable expectation. After failing in its attempt to overturn the zoning regulation through other means, Waste Management cannot achieve the same end by now claiming a protected property interest on the basis of investments it made in reliance on a legal challenge that has proved to be without merit.

Because we conclude that the regulation does not infringe on Waste Management's property rights as measured against its reasonable investment-backed expectations for use of its land, we conclude that the height limitation does not effect a taking of Waste Management's property in violation of the Connecticut constitution. Accordingly, because the height limitation is valid and Waste Management concedes that the landfill is in violation thereof, the enforcement action must be remanded for consideration of the zoning enforcement officer's claim for injunctive relief.

The judgment in *Waste Management of Connecticut, Inc.* v. *Zoning Commission*, Docket No. 14951, is reversed and the case is remanded with direction to render judgment dismissing the plaintiff's administrative appeal; the judgment in *Bauer* v. *Waste Management of Connecticut, Inc.*, Docket No. 14949, is reversed and the case is remanded for further proceedings in accordance with the preceding paragraph.

In this opinion the other justices concurred.