[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The present case is before the court on remand from the Supreme Court for "consideration of the zoning enforcement officer's claim for injunctive relief." Bauer v. Waste Managementof Connecticut, Inc., 234 Conn. 221, 259, ___ A.2d ___ (1995). The facts of the case as set forth in Bauer v. Waste Management ofConnecticut, Inc., 234 Conn. 221, ___ A.2d ___ (1995) are as follows:
"Waste Management is the owner of property that is located in an industrial zone in New Milford, on which it operates a solid waste landfill. The landfill was established by Waste Management's predecessor in title prior to the 1971 adoption of zoning regulations, which prohibited a landfill in an industrial zone. CT Page 12580 Because the landfill existed prior to the adoption of the zoning regulations, it became a permitted nonconforming use. Waste Management's predecessor subsequently received a permit from the DEP to operate the landfill to a maximum height of ninety feet." Id., 221.
"In 1985, Waste Management applied to the DEP for a modified permit, pursuant to General Statutes § 22a-208a(d), that would allow it to increase the maximum height of the landfill from 90 to 190 feet. In compliance with § 22a-209-4 (b)(3) of the Regulations of Connecticut State Agencies, Waste Management published notice that it had applied for the modified permit and invited the public to comment thereon. No comments were received from New Milford town officials or from the commission, and on February 24, 1987, the DEP issued the modified permit. No appeal was taken from the granting of the permit." Id., 226.
"On October 18, 1988, the commission held a properly noticed public hearing to consider an amendment to the New Milford zoning regulations that would limit any landfill or solid waste facility existing as a nonconforming use within New Milford to a maximum height of ninety feet (height limitation). No action was taken on the proposed amendment until the commission voted to adopt it on November 14, 1989." Id., 227.
"Waste Management appealed to the trial court from the adoption of the height limitation by the commission. In the administrative appeal, Waste Management claimed that: (1) the height limitation was preempted by § 22a-207 et seq. and by the DEP permit; (2) the commission had waived its rights to restrict the height of the landfill when it failed to exercise its statutory right to appeal from the grant of the DEP permit in 1987; (3) the height limitation prohibited the continuance of Waste Management's nonconforming use, thus constituting an illegal amortization; and (4) the height limitation effected a taking of Waste Management's property through inverse condemnation in violation of article first, § 11, of the Connecticut constitution. The trial court bifurcated the issues, hearing the first three issues separately from the taking issue." Id.
"At the conclusion of the first part of the bifurcated trial, the court rejected each of Waste Management's claims. Specifically, the court determined that our holding in Beacon Fallsv. Posick, 212 Conn. 570, 563 A.2d 285 (1989), in which we concluded that the act prceludes [precludes] local zoning regulations only CT Page 12581 to the extent that they conflict with a DEP permit regulating land owned by the Connecticut Resources Recovery Authority, was dispositive of Waste Management's preemption claim. The court further concluded that the adoption of the height limitation was not precluded by the commission's failure to appeal from the issuance of the DEP permit. Finally, the court concluded that the height limitation did not constitute an illegal amortization of Waste Management's nonconforming use because it was a properly enacted reasonable regulation that furthered a public interest." Id., 228.
"After the first part of the trial, but preceding the trial on the taking issue, the zoning enforcement officer, Robert Bauer, brought the enforcement action seeking a permanent injunction to prohibit Waste Management from violating the ninety foot height limitation. It was uncontested that Waste Management was in violation of the height limitation at that time." Id., 228.
"Following a trial on the taking issue, the court determined that `[o]nce the landfill reached ninety feet in March, 1993, application of the amended zoning regulation constituted a taking of [Waste Management's] property. . . . [The commission's] amendment to the zoning regulations is in violation of the Connecticut constitution and [is] therefore illegal.' (Citation omitted.) Accordingly, the trial court sustained Waste Management's administrative appeal and remanded the case to the commission to revoke the height limitation. On the basis of this holding, the court contemporaneously also denied the injunctive relief sought in the enforcement action. In a subsequent articulation, the trial court found that Waste Management's use of the landfill was a permissible intensification of its prior use. Quoting Hall v. Brazzale, 31 Conn. App. 342, 349, 624 A.2d 916, cert. denied, 227 Conn. 905, 632 A.2d 691 (1993), the trial court concluded that [m]ore of the same . . . cannot be the basis for a finding of an unlawful expansion of a prior existing nonconforming use. The court also concluded that the zoning enforcement officer was estopped from enforcing the height limitation because the zoning enforcement officer had approved plans for a gas cogeneration facility, and a landfill inspector was aware that Waste Management had begun construction of the cogeneration facility in reliance on its use of the DEP permit." (Internal quotation marks omitted.) Id., 229.
The Supreme court upheld the trial court's determination on the issues of preemption, waiver and amortization and overruled the CT Page 12582 trial court on the constitutional taking issue. As previously stated, this case is before the court on remand from the Supreme court for consideration of the plaintiff's claim for injunctive relief. The claim for injunctive relief includes the following as to the first count of the plaintiff's amended complaint dated September 23, 1992:
"1. An order requiring the Defendant to correct and abate that condition which violates Article X-III,[1] Paragraph 6, and Article II-VI[2] of the New Milford Zoning Regulations.
2. Temporary and permanent injunctions restraining the Defendant from using, or from continuing to use, the premises owned by it. . . . in a manner which violates Article X-III, Paragraph 6, and Article II-VI of the New Milford Zoning Regulations.
3. A mandatory injunction requiring the Defendant to remove all garbage, solid waste and other material deposited upon the property above the 90 foot height limitation (i.e. above 330 feet above mean sea level).
4. Civil penalties as provided by; Sections 8-12 of the General Statutes.
5. Such other and further relief as the court may deem just and proper." (Plaintiff's amended complaint dated September 24, 1992 at p. 10.)
The claim for relief as the second count of the plaintiff's complaint requests:
"1. An order requiring the Defendant to correct and abate that condition which violates Article XI-II[3] and Article XI-III[4]
of the New Milford Zoning Regulations.
2. Temporary and permanent injunctions restraining the Defendant from using, or from continuing to use, the premises owned by it. . . . for the disposal of solid waste and garbage above a maximum height of 90 feet or a maximum elevation of 330 feet above mean sea level in violation of Article XI-II and article XI-III of the New Milford Zoning Regulations.
3. A mandatory injunction requiring the Defendant to remove all garbage, solid waste and other material deposited upon the property above the 90 foot height limitation (i.e. above 330 feet CT Page 12583 above mean sea level).
4. Civil penalties as provided by; Sections 8-12 of the General Statutes.
5. Such other and further relief as the court may deem just and proper." (Plaintiff's amended complaint dated September 24, 1992 at p. 11.)
At the trial of this matter on remand, Waste Management argued that its actions were based on the advise of counsel and that Waste Management had no way of anticipating that the Supreme Court would decide as it did. The defendant also argued that its action in violation of the ordinance was not willful and was indeed in good faith based on the favorable decision of the trial court, Susco, J.
Waste Management argued that the court must consider the potential adverse environmental impact inherent in removing the 1.5 million cubic yards of waste that is estimated to have accumulated in violation of the zoning ordinance. The defendant presented several experts regarding the impact that clean up will have on the neighboring property including the possible release of asbestos, a known carcinogen, into the air, the release of noxious odors, fires, and the potential for discharge of leachate[5] into the ground which is likely to cause pollution of water supplies.
The defendant also argued that this court must consider the effects of removal on the public, specifically the neighboring community and the workers who will eventually be involved with the removal. The defendant contends that "[t]he testimony shows that those impacts will be so severe as to warrant the denial of plaintiff's request for a mandatory injunction to excavate all waste above 90 feet." (Defendant's post hearing memorandum dated October 26, 1995, p. 19.) As stated above, all this evidence was presented by Waste Management's team of experts. The plaintiff's expert presented opposing testimony and suggested that removal of the 1.5 million cubic yards of waste could be accomplished if safeguards are put in place and carefully implemented.
Waste Management also argued that the cost of clean up of the facility in the form of removal of all waste above the 90 foot height limitation would be extremely high and has been estimated to be between $103 million and $105 million. It is noted that testimony at trial revealed that Waste Management, Inc., the parent company of Waste Management of Connecticut, Inc., is a company with CT Page 12584 approximately $10 billion per year in revenue. Waste Management, Inc., derived approximately $50 million in gross revenue during the two years in which the validity of the zoning ordinance was on appeal. Along this same line, the defendant argued that injunctive relief is meant to deter, not punish.
The defendant argued that the validity of the ordinance was determined by Judge Susco's decision and was in effect until the Supreme Court reversed that decision. Therefore, Waste Management claims its action in continuing to dispose of waste at the New Milford was not only not a willful violation of an ordinance, it was not a violation at all. In addition, the defendant argued that an order to remove the waste would be inequitable because the Town was unjustly enriched. Between January 1, 1993 and June 30, 1995, Waste Management paid royalties to Town totaling $662,935 pursuant to General Statutes § 22a-220b which requires a payment of 50 cents per ton of solid waste to a municipality in which a landfill is located. Waste Management argued that allowing the Town of New Milford to keep this money constitutes unjust enrichment.
Finally, the defendant argued that the excavation requires regulatory approve from the EPA and DEP, that Waste Management should be allowed to fill the side slopes of the facility below the current peak elevation of 160 feet and that in the event of denying the plaintiff's request for removal then Waste Management should be allowed to cap and close under DEP jurisdiction and not the jurisdiction of the zoning enforcement officer.
The general rule governing injunctions is that the applicant must demonstrate that the failure to restrain the conduct which is the subject of the application will result in irreparable harm to the applicant and that no adequate remedy exists at law. This general rule is inapplicable, however where a municipality seeks to enforce its zoning regulations under General Statutes 8-12, and all that must be proven is a violation of the regulations. Fisette v.DiPietro, 28 Conn. App. 379, 388, 611 A.2d 417 (1992); Farmingtonv. Viacom Broadcasting, Inc., 10 Conn. App. 190, 197, 522 A.2d 318, cert. denied, 203 Conn. 808 (1987). However, a decision to grant or deny an injunction must be compatible with the equities in the case which include the gravity and willfulness of the violation, the potential harm to the parties, and the public interest involved. Crabtree v. Coyle, 19 Conn. App. 208, 211, 561 A.2d 455
(1989); Johnson v. Murzyn, 1 Conn. App. 176, 180, 469 A.2d 1227, cert. denied, 192 Conn. 802 (1984). CT Page 12585
Cases from other states have held that where a statute authorizes a public entity such as a zoning board or a state regulatory agency to seek an injunction to enforce compliance with a regulatory scheme but says nothing about the injury caused, the public entity is not required to show irreparable harm or the unavailability of an adequate remedy at law prior to obtaining the injunction. All that must be shown is a violation of the particular statute or ordinance. Johnson v. Murzyn, supra, 1 Conn. App. 180;Crabtree v. Van Hise, 39 Conn. Sup. 334, 337,464 A.2d 865 (1983).
As stated above, a decision to grant or deny an injunction must be compatible with the equities in the case which include the gravity and willfulness of the violation, the potential harm to the parties, and the public interest involved. Crabtree v. Coyle, supra, 19 Conn. App. 211; Johnson v. Murzyn, supra, 1 Conn. App. 180. The defendant argued that its conduct was not willful and that it "acted in a genuine, good-faith and reasonable belief in the lawfulness of its conduct." (Defendant's post hearing memorandum dated October 23, 1995, p. 4.) Waste Management further argued that it relied upon the advice of counsel, operated under the supervision and permission of the DEP and never disregarded the law. It further contended that it had no way to foresee that legal precedent would be overruled by the Connecticut Supreme Court as was done, in its opinion, by the Court's decision in Bauer v. WasteManagement of Connecticut, Inc., 234 Conn. 221, ___ A.2d ___ (1995).
The defendant claimed that the Supreme Court "effectively reversed, or at least ignored," its ruling in Helicopter Associatesv. Stamford, 201 Conn. 700, 519 A.2d 49 (1986), when the Court decided Bauer v. Waste Management of Connecticut, Inc., supra,234 Conn. 221. The Supreme Court, however, did not ignore nor did it reverse its earlier ruling.
In Bauer v. Waste Management of Connecticut, Inc., supra,234 Conn. 239, the Court stated: "The gravamen of Waste Management's argument is that the nonconforming use analysis in these appeals does not concern their valid nonconformity with the 1971 zoning regulation, but rather pertains to their nonconformity with the 1989 height limitation. . . We disagree, however, with Waste Management's ultimate conclusion. Because the zoning enforcement officer's complaint alleged that Waste Management was in violation of the zoning regulations in that it had exceeded the ninety foot height limitation, the sole issue was whether the landfill's CT Page 12586 continued growth beyond ninety feet was within the scope of Waste Management's nonconforming use of the property with respect to the ninety foot height limitation (i.e., the 1989 regulation). In its fifth special defense to the enforcement action, Waste Management claimed that it had "established and exercised a right to fill its landfill above [90 feet], and up to [190 feet], by virtue of its 1987 DEP permit and the lack of any local zoning prohibition . . . prior to the adoption . . . of the height limitation at issue, and thus [Waste Management] has a vested nonconforming right to fill to elevation granted by the DEP permit." (Emphasis omitted.) According to Waste Management, when the height limitation was adopted in November, 1989, the DEP permit was the firmly-established basis of Waste Management's use. We disagree." Id.
"Waste Management cites Helicopter Associates, Inc. v.Stamford, supra, 201 Conn. 700, to support this claim. In Helicopter Associates, Inc., we determined that, although the plaintiff had a valid nonconforming use as a heliport, the scope of that use was restricted by the rights of the plaintiff that legally existed at the time the heliport became nonconforming. Waste Management misreads the case, however, when it argues that a legally existing right is sufficient to create a nonconforming use, rather than merely to define its scope. In Helicopter Associates, Inc., we determined that the property at issue had been used as a commercial heliport, and, therefore, that it was a nonconforming use. The scope of that nonconforming use was constrained by the fact that the plaintiff did not have a license and therefore was limited by statute to thirty-six flights per year. We stated explicitly that `not only must the premises have been adapted for a given purpose, but the premises must also have been employed within that purpose.'" (Citations omitted; emphasis omitted.) Id., 239-40.
"Waste Management did not plead or argue in the trial court that it had operated the landfill at a height of greater than ninety feet at the time the height restriction was enacted, and, therefore, it failed to establish a nonconforming use as to that regulation. The degree, if any, to which the DEP permit would have given Waste Management a right to expand beyond ninety feet is irrelevant to determine the extent of a nonconforming use in the absence of proof of the exercise of that legal right." (Footnotes omitted.) Id., 241.[6]
"Because it failed to establish a nonconforming use as to the CT Page 12587 1989 height limitation, the claims of Waste Management that are dependent on its use being nonconforming with respect to that regulation must fail. In other words, because Waste Management did not allege or prove that the landfill was over ninety feet in height in 1989 when the ninety foot height limitation was adopted, it did not establish a nonconforming use with respect to the height limitation. Waste Management's arguments that the continued growth of the landfill was a permissible intensification of a nonconforming use or, alternatively, was permissible under the natural expansion doctrine, therefore, cannot succeed, because both claims are predicated on the landfill being a nonconforming use with respect to the height limitation." Id.
The issue, having been fully addressed by the Supreme Court, will not be given further countenance here. Waste Management may characterize the Supreme Court's decision as it sees fit but that decision nevertheless fully addressed and settled the issue.
In terms of the next argument that there was no way to anticipate or foresee a change in the law of taking, Waste Management cites law that defeats it's own proposition. The defendant cites the dissenting opinion of Justice Stevens in Nollanv. California Coastal Commission, 483 U.S. 825, 866,107 S.Ct. 3141, 3164 (1987), for the proposition that "[e]ven the wisest lawyers would have to acknowledge great uncertainty about the scope of this Court's takings jurisprudence." This is advice Waste Management should have heeded and can not now claim that it had no way to anticipate a change in the law of takings. The defendant even states in its post trial memorandum that "takings law is among the most difficult areas of constitutional property law." (Waste Management's post trial memorandum, p. 35.) As stated several times throughout the course of this litigation and by the Connecticut Supreme Court, Waste Management knew it was risking the possibility of having to remove waste in excess of the 90 foot limitation imposed by the New Milford Zoning Regulation in the event that the Supreme Court overruled the trial court. To now claim the benefit of having ignored that risk by requesting it not be penalized for having taken it, is unpersuasive at best and absurd at worst.
Waste Management also argued that its conduct was not grave and not willful. In Connecticut, willful misconduct is conduct that displays a reckless disregard for the safety and rights of others and the consequences of one's actions. Brown v. Branford,12 Conn. App. 106, 108, 529 A.2d 743 (1987); see also Menzie v.CT Page 12588Kalmonowitz, 107 Conn. 197, 199, 139 A. 698 (1928). "Willful misconduct has been defined as intentional conduct designed to injure for which there is no just cause or excuse. . . . [Its] characteristic element is the design to injure either actually entertained or to be implied from the conduct and circumstances. . . . Not only the action producing the injury but the resulting injury also must be intentional." (Citations omitted; internal quotation marks omitted.) Dubay v. Irish, 207 Conn. 518, 533,542 A.2d 711 (1988).
"While [our Supreme Court has] attempted to draw definitional distinctions between the terms willful, wanton or reckless, in practice the three terms have been treated as meaning the same thing. The result is that `willful,' `wanton,' or `reckless' conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent. . . . It is at least clear . . . that such aggravated negligence must be more than any mere mistake resulting from inexperience, excitement, or confusion, and more than mere thoughtlessness or inadvertence, or simply inattention. . . . W. Prosser W. Keeton, Torts (5th Ed.) § 34, p. 214." (Internal quotation marks omitted). Dubay v. Irish, supra, 207 Conn. 533.
In terms of the gravity and willfulness of the violation, the defendant continued to deposit waste at the New Milford facility so that the peak height in areas of the landfill is presently 160 feet, 70 feet above the limit imposed by the zoning ordinance. Between 1993 when the appeal was taken and September 19, 1995, when this court issued a temporary injunction to prevent further disposal of waste at the New Milford facility, the defendant almost tripled the amount of waste being deposited in New Milford on a yearly basis. Waste Management not only gambled but increased the odds when it stepped up the amount of waste being deposited in New Milford during the pendency of the appeal.
Testimony at trial indicated that Waste Management increased its disposal of 190,494 tons in 1989 to 581,832 tons in 1994, with a projected 573,200 tons in 1995. (Plaintiff's Exhibit B.) Additionally, Waste Management continued to dispose of waste at this facility even after the Supreme Court ruled that the zoning ordinance was valid. Until this court issued a temporary injunction, Waste Management deposited approximately 55,824 tons of waste above 90 feet after the Supreme Court's July 11, 1995 decision. It has been posited that this amount of waste is equal CT Page 12589 to all the trash generated in the State of Connecticut for eight days. This was done with the knowledge that a higher court not only could, but indeed did, overrule the superior court decision the defendant so earnestly relied upon in continuing to deposit waste in New Milford. Waste Management admitted to earning what it describes as "a de minimis" net income, approximately $38,000, from depositing waste above 90 after the Supreme Court denied its Motion for Reconsideration. (Defendant's Exhibit 38; see also Defendant's post hearing memorandum dated October 23, 1995, p. 37). To suggest that this was anything less than grave or willful is disingenuous.
In this case, Waste Management had actual knowledge of the Town's intention to limit the height of the landfill to 90 feet as early as 1989 when the zoning amendment was adopted. Throughout the proceedings from the time the case began to unfold up until September 19, 1995, Waste Management paid no heed to the ramifications of its own actions. The defendant simply "gambled that the commission would not exercise its zoning prerogatives,"Bauer v. Waste Management of Connecticut, Inc., supra, 234 Conn. 258; and further gambled on the constitutional taking issue that went before the Supreme Court. At trial, John J. Ray III, group vice president and general counsel to Waste Management, Inc., testified that he advised Waste Management to "maintain the status quo." This advise was given, and heeded, after the Supreme Court upheld the validity of the zoning ordinance.
The argument that the judgment of the trial court was license to continue to deposit waste in the landfill is untenable. As the defendant points out, proceedings are stayed during the pendency of an appeal. "The finality of a trial court judgment is not directly affected by the fact that an appeal automatically stays the enforcement of a judgment. See Practice Book 4046 (formerly 3065). The stay does not vacate the judgment obtained by the successful litigant. It merely denies that party the immediate fruits of his or her victory; Connolly v. Connolly, 191 Conn. 468, 481,464 A.2d 837 (1983); in order to protect the full and unhampered exercise of the right of appellate review. . . . If a judgment has been satisfied before it is reversed . . . the law raises an obligationin the party to the record, who has received the benefit of theerroneous judgment, to make restitution to the other party for whathe has lost; and the mode of proceeding to effect this object must be regulated according to circumstances. . . . The finality of a judgment may, however, depend upon, the outcome of the pending appeal. If the trial court's judgment is sustained, or the appeal dismissed, the final judgment ordinarily is that of the trial CT Page 12590 court. If, however, there is reversible error, the final judgment is that of the appellate court. . . ." (Emphasis added; citations omitted; internal quotation marks omitted.) Preisner v. AetnaCasualty Surety Co., 203 Conn. 407, 414-415, 525 A.2d 83 (1987).
The fact that the superior court ruled in favor of Waste Management by finding that the zoning ordinance was an unconstitutional taking of Waste Management's property, does not immunize the defendant from the necessity of coming into compliance with the New Milford Regulation which was found to be valid by this state's Supreme Court. As stated in Preisner v. Aetna Casualty Surety Co., supra, 203 Conn. 414, a stay "denies that party the immediate fruits of his or her victory." The fact that Waste Management chose to immediately enjoy the fruits of its victory can not now be claimed to be the basis for denying injunctive relief in this case. To do otherwise would turn the language of Preisner on its head. If the tables were turned in this case and Waste Management had not prevailed at the superior court, proceeded to appeal and prevailed on appeal, this court would not have been surprised if Waste Management had sought damages from the Town for any loss of profits it may have sustained during the time the case was on appeal.
Waste Management's argument that it "proceeded on the advise of counsel and with the good-faith, bona fide belief that its actions comported with the law," is also unavailing. (Defendant's post hearing memorandum of decision, p. 33.) This argument is set forth in further support of the argument that the action of Waste Management was not willful. The fact that Waste Management weighed the potential risks at each stage of the litigation by consulting with counsel does not militate a finding of willfulness. The fact that Group General Counsel, Thomas Jennings, "believed the possibility that the company's position would be reversed on appeal to the Connecticut Supreme Court to be less than five percent" additionally does not make the action of Waste Management any less willful.
Waste Management also argued that royalty payments made to the Town in the amount of $660,000 between January 1, 1993 and June 30, 1995, should be returned to avoid "unjust enrichment." This argument lacks merit. As pointed out by the defendant, "[t]he intent of the state legislature in enacting the royalty statute was to compensate the host municipality in return for allowing solid waste to be stored within its borders." (Emphasis added.) (Defendant's post hearing memorandum, p. 37.) During the time CT Page 12591 these royalties were received until present, the Town of New Milford had stored the waste deposited within its borders. In it's post trial memorandum, Waste Management provided excerpts from the testimony of various legislative representatives indicating that the royalty payments were for the purpose of assisting the host town in dealing with problems including increased traffic and environmental concerns as well as the operation of the facility. During the time frame of this litigation and into the future, the Town of New Milford will still be faced with the problems the royalties were legislative intended to address. For these reasons, the argument of Waste Management regarding unjust enrichment is unavailing.
I. Civil Penalties and Injunctive Relief
In Planing Zoning Commission of Middletown v. Zemel Bros.,Inc., 29 Conn. Sup. 45, 62, 270 A.2d 562 (1970), the court stated that "the only effective method to uphold the integrity of the zoning regulations is to issue an injunction restraining the defendants from conducting the proposed [activity]. The amounts of fines provided by law for zoning law violations are a mere pittance compared to the potential profit from the venture. Section 8-12 of the General Statutes authorizes an injunctive proceeding to prevent such violations, and even in the absence of such a statute a court of equity may render relief. Darien v. Webb, 155 Conn. 581, 588;Coombs v. Larson, 112 Conn. 236, 244." Planning ZoningCommission v. Zemel Bros., Inc., supra, 29 Conn. Sup. 62.
Article XIX-I of the New Milford Zoning Regulations provides in pertinent part:
 The Zoning Enforcement Officer, may institute any appropriate action or proceedings to prevent the unlawful erection, construction, reconstruction, alteration, repair or conversion of any building or structure, or the unlawful use of land to restrain, correct or abate such violations, to prevent the occupancy of said building, structure or land or to prevent any illegal act, conduct, business or use in or about the premises. Whenever such acts shall be in contradiction to the provisions of these regulations, penalties shall be as provided by the General Statutes.
Section 8-12 of the General Statutes provides in pertinent part: CT Page 12592
 If . . . any building, structure or land has been used, in violation of any provision of this chapter or of any bylaw, ordinance, rule or regulation made under authority conferred hereby, any official having jurisdiction, in addition to other remedies, may institute an action or proceeding to prevent such unlawful erection, construction, alteration, conversion, maintenance or use or to restrain, correct or abate such violation or to prevent the occupancy of such building, structure or land or to prevent any illegal act, conduct, business or use in or about such premises. . . . The owner or agent of any building or premises where a violation of any provision of such regulations has been committed or exists, . . . shall be fined not less than ten nor more than one hundred dollars for each day that such violation continues; but, if the offense is willful, the person convicted thereof shall be fined not less than one hundred dollars nor more than two hundred and fifty dollars for each day that such violation continues, or imprisoned not more than ten days for each day such violation continues or both; and the superior court shall have jurisdiction of all such offenses, subject to appeal as in other cases. . . . General Statutes § 8-12.
In the present case, the previous zoning enforcement officer, Robert Bauer, brought an enforcement action seeking a permanent injunction in March of 1993 to prohibit Waste Management from violating the ninety foot height limitation. "It was uncontested that Waste Management was in violation of the height limitation at that time." Bauer v. Waste Management of Connecticut, Inc., supra,234 Conn. 228. Therefore, civil penalties began to accrue from at least March of 1993, if not before. When Waste Management made the decision to continue to utilize the landfill in excess of the 90 foot zoning limitation, as the Supreme Court aptly stated, it "took the gamble" and in this case lost. However, that was a risk freely undertaken while fully aware of the fact that the case would be appealed. Therefore, civil penalties in the form of a fine shall be assessed in accordance with the General Statutes § 8-12 at $100 per day for every day from the date the landfill was in violation of the zoning ordinance which in this case was March 1993, up to and including the day this court ordered a temporary injunction stopping Waste Management from further violation which was September 19, 1995. CT Page 12593
II. Clean Closure — Injunctive Relief
The plaintiff has requested abatement and correction of the conditions which violate the zoning ordinances as well as clean up of all garbage, solid waste and other material deposited upon the property of Waste Management above the 90 foot height limitation. The defendant argued that such relief is to the extreme detriment of the defendant, one of the considerations the court must consider in balancing the equities of this case. There is no Connecticut case law specifically addressing the issues that are involved in "clean closure" of a solid waste disposal facility such as the one operated by Waste Management. However, the Supreme Court of California has addressed several of the issues that arise in large scale removal of solid waste, including the equities of such a removal, in the case of IT Corporation v. Solano County Board ofSupervisors, 820 P.2d 1023 (Cal. 1991).
In IT Corporation v. Solano County Board of Supervisors, supra, 820 P.2d 1023, the plaintiff moved for a writ of mandate to set aside an order of the local planning commission which required "clean closure" of all encroachments in a 200 foot buffer zone established in its local permit. The trial court granted the writ. The appellate court affirmed and the supreme court overruled. The facts in IT Corporation are summarized as follows:
The plaintiff, IT Corporation, operated a 106 acre hazardous waste disposal facility adjoining the City of Bencia in California. In 1968, the County gave IT Corporation's predecessor a conditional permit allowing it to utilize the parcel for disposal of liquid and hazardous waste. The permit required that "all treatment and storage of hazardous waste must be set back at least 200 feet of the outer perimeter of the permitted property." IT Corporation v.Solano County Board of Supervisors, supra, 820 P.2d 1025. By 1972, the facility was already in violation of the conditional permit. However, IT's predecessor was permitted to purchase additional land to bring the parcel into conformity. Id.
Another conditional permit was issued by the County in 1973 which again contained the 200 foot setback requirement. When IT acquired the facility in 1975, it continued to deposit waste in the existing areas and inherited two landfills which were in violation of the 200 foot setback requirement. IT, however, continued to deposit waste and also purchased contiguous land to cure the violations. One area, however, still remained in violation. Id. CT Page 12594
In 1985, the County's director of public works issued a stop order against grading work being performed at the site because IT failed to apply for a permit. In an attempt to settle the matter, IT agreed to participate in formal hearings to determine whether it was in compliance with the 1973 permit. Between 1986 and 1987, the county's planning commission (Commission) held numerous hearings. IT conceded and the evidence showed "overwhelming" that IT was not in compliance with the 1973 permit.[7] Id.
The Commission proposed a two pronged remedy for violation of the conditional permit. "First, IT [was ordered to] immediately cease using and close all encroachments. Second, IT [was ordered to] within 90 days submit to pertinent state and federal regulators its plans for clean closure, i.e., removal of all wastes [except drum burials] and contaminated soils from the setback zone; must modify its closure plans as required by the agencies; and must begin closure immediately upon obtaining necessary regulatory approvals." Id., 1026. The Commission also declared that it would reopen the hearings and review appropriate remedies if clean closure was not approved.
"IT appealed the clean closure order to the Board. The company urged, inter alia, that the proposed remedy of complete restoration was preempted, arbitrary, unreasonable, and estopped by the County's long delay[8] in enforcing [the permit]. IT estimated that clean closure of the encroachments entailed removal of some 174,000 cubic yards of hazardous material and might cost as much as $40.5 million." Id., 1026.
After consideration of other alternatives, the Board adopted the Commission's remedial proposal. IT then appealed to the California superior court which "concluded that because state law has pre-empted the storage, treatment, and disposal of hazardous waste, . . . [t]he Board is without authority to dictate a remedy — i.e. clean closure — for IT's permit violation. On the other hand, the court held, the Board could order IT to submit for appropriate state regulatory approval one or more plans which [IT} proposes to remedy the noncompliance." (Internal quotation marks omitted; italics omitted.) Id. Both parties appealed and the Court of Appeals affirmed.
The California Supreme Court stated that "[w]hen use of a parcel violates applicable zoning rules, the responsible agency may obtain abatement — i.e., removal of the violation and restoration of legal use — even when substantial expense is involved."[9] Id., CT Page 12595 1027.
Because the permit authorized the Commission to hold compliance reviews and take action it "deemed appropriate" to correct noncompliance, it was found to be acting within the scope of its powers. Id., 1028. Likewise, the zoning ordinance at issue in this case, permits the Town to take action to abate and correct violations. (See article XIX-I of the New Milford Zoning Regulations and General Statutes § 8-12.) The injunctive relief requested by the Town in this case specifically seeks abatement and correction of the violation of the 90 foot height requirement at issue.
IT argued that the Commission's remedial order was "invalid because it invades the sensitive field of hazardous waste management in ways which are closely and exclusively regulated by the state. In particular, IT [invoked] the state's complex scheme for overseeing the closure of hazardous waste disposal sites — a scheme designed to minimize health, safety, and environmental risks when use of a site is discontinued. This scheme, IT argued, places all closure procedures and decision in the hands of an expert state agency, . . . and thus precludes a local government from dictating the method of closure." Id., 1028 . A similar argument was raised by Waste Management in it's pre-hearing memorandum dated September 18, 1995, wherein it stated that "any order of removal requires a permit from the Connecticut Department of Environmental Protection, and thus this court is without jurisdiction to order such removal directly." (Pre-hearing memorandum of Defendant Waste Management of Connecticut, Inc. p. 4.) The same argument was again presented by Waste Management throughout the course of the trial as well as in it's post hearing memorandum dated October 23, 1995.
In IT Corporation v. Solano County Board of Supervisors,820 P.2d 1023 (Cal. 1991), the California Supreme Court found this argument to be without merit. This court agrees. The California Supreme Court stated that the Hazardous Waste Control Act (HWCA), which is substantially similar to Connecticut's Solid Waste Management Act, did not "indicate any intent or need to immunize a state-authorized facility from the enforcement of applicable local land use regulations. Indeed, the HWCA expressly suggests otherwise." Id., 1030. Connecticut's Solid Waste Management Act, likewise suggests otherwise. Specifically, General Statutes §22a-208a(b) states in pertinent part that "nothing in this chapter or chapter 446e shall be construed to limit the right of any local governing body to regulate, through zoning, land usage for solid CT Page 12596 waste disposal." This court certainly has the power to order Waste Management to apply to the Connecticut Department of Environmental Protection for a permit to remove the waste in excess of the 90 foot height limitation as set forth in New Milford's Zoning Regulations. That is precisely what this court does order with the added requirement that the application process begin within 10 days from the date of this order. In addition, the court will keep jurisdiction over this matter until such time as Connecticut DEP determines whether a permit will issue.
IT, like Waste Management, also argued "that the Board's order [disrupted] the state's regulatory process for closure of hazardous waste facilities, bypasses the expertise of state agencies, and may effect statewide policies on hazardous waste transportation and storage capacity." Once again, the California Supreme Court disagreed and this court disagrees with Waste Management's arguments along the same lines. The order of this court is removal of all waste deposits in excess of the New Milford Zoning Regulation restricting the height of the landfill to 90 feet. This is to be accomplished subject to the approval of all pertinent regulatory agencies including the DEP.
It is further noted that the alternative suggested by Waste Management would, as the California Supreme Court aptly stated, constitute "no enforcement or remedy at all. Rather, [the alternatives submitted by IT] rewarded and ratified IT's violations by simply expanding the permit boundaries to accommodate them. The Board's insistence upon the original terms of the permit was hardly `unreasonable.'" IT Corporation v. Solano County Board ofSupervisors, supra, 820 P.2d 1036.
One proposal advanced by Waste Management is that it should be allowed to fill the side slope capacity below the current 160 feet. Waste Management argued that any prohibition of this action would impermissibly extend the zoning ordinance which limits peak elevation and not side slope disposal. Waste Management's proposed resolution and request to continue using available side slope to a 160 foot height would similarly result in rewarding Waste Management and ratifying it's violations. Furthermore, it is the opinion of this court that this argument is nothing more than sophistry. As one playwright wrote, "[s]ophistry in a phrase so neat you can't see the lose end that would unravel it. A perfect dud. You can do that with words. . ."[10] The idea that filling the side slopes on areas in excess of the 90 foot height limitation is not in violation of the zoning ordinance is nothing more than CT Page 12597 "persuasive nonsense." Id.
Waste Management argued that the court must consider the potential adverse environmental impact the would occur if the court orders removal of the waste in excess of the 90 foot height limitation. The defendant presented several experts regarding the impact that clean up will have on the neighboring property including the possible release of asbestos, a known carcinogen, into the air, the release of noxious odors, fires, and the potential for discharge of leachate into the ground which is likely to cause pollution of water supplies. Each of the experts, Peter Richer, Jeffrey Heidtman, Charles Anderson and Martin Sara, however, were either employed by Waste Management, not just as experts but as permanent employees, or were former employees. Specifically, Peter Richer is employed by Waste Management of Connecticut, Inc.. Jeffrey Heidtman had been a Waste Management consultant for several years and developed the plan to expand the landfill above 90 feet. Charles Anderson and Martin Sara are currently employed by Rust Environment Infrastructure, Inc., a Waste Management affiliated company and both were formerly employed by Waste Management, Inc. Mr. Anderson designed the Waste Management gas collection system that is used at the New Milford location and Mr. Sara developed the water monitoring system that is used at the New Milford location. Clearly, the testimony of these "experts" is not independent in light of the close ties each of these witnesses has with Waste Management. In addition, by ordering Waste Management to apply to the DEP for a permit to conduct a "clean closure" of the facility, the court is considering the potential for environmental harm and the effect of removal on the surrounding property owners and site workers. Thus, the potential environmental concerns as well as the public concerns raised by Waste Management will not be overlooked.
In summary, the injunctive relief sought by the Town in paragraphs 1, 2 and 3 as to the first and second counts of the complaint is hereby granted, subject to the DEP's approval of clean closure of the facility. Waste Management of Connecticut, Inc., is ordered to apply to the Connecticut DEP and any other appropriate state agencies for a permit to remove all waste in whatever form in excess of the 90 foot height limitation, within 10 days from the date of this order. In addition, Waste Management of Connecticut, Inc. is ordered to pay fines to the Town of New Milford for the period of March 31, 1993 through September 19, 1995 at $100 per day for a total of $89,200. The court further retains continuing jurisdiction over this case to resolve any issues that may arise CT Page 12598 pending the DEP closure approval and will reopen the hearings and review appropriate remedies if clean closure is not approved.*
HON. CHARLES D. GILL, J.