[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum Filed September 17, 1996
This is an action by the State Commissioner of Environmental Protection, Sidney J, Holbrook ("Commissioner"), to enforce an administrative order ("Order") issued by his predecessor, Timothy R.E. Keeney ("prior Commissioner"), to the defendant, Huntington Kildare, Inc. ("HK"), with respect to the Hatch Pond Dam ("Dam") in Sharon, Connecticut. In the Order (Order No. DSO-92-005), which was issued on April 7, 1994 pursuant to General Statutes §§ 22a-6 and 22a-402, the prior Commissioner found that the Dam was in an unsafe condition and ordered the defendant as its owner both to prepare a study relating to its condition, safety and need for repairs and to engage in all work necessary to repair it.
The defendant did not request an administrative hearing to contest the subject Order, as was its right under General Statutes § 22a-408. Even so, it has allegedly failed to comply with the Order ever since it was issued. Thus on March 15, 1995, to require immediate compliance with the Order and prevent future violations thereof, the plaintiff Commissioner commenced the instant action. To accomplish his objectives in filing the action, the Commissioner has requested the following relief: an order temporarily and permanently enjoining the defendant from violating the subject Order; an order requiring the defendant to forfeit to the State a sum not exceeding five hundred dollars ($500.00) for each violation and each day's continuance of a violation of the Order an order requiring the defendant to pay the reasonable costs and expenses of the State in detecting, investigating, controlling and abating all violations of the Order alleged in the Complaint: and such other relief as the Court deems just and equitable to effectuate the purposes of this CT Page 5434 action. Complaint p. 3.
On August 2, 1995 the defendant filed its Answer, Special Defenses and Counterclaim. The Counterclaim was stricken in its entirety by the Court, Hennessey, J., in December of 1995. Thereafter, when the defendant revised its Special Defenses at the request of the plaintiff and upon the order of this Court, the plaintiff moved to strike each special defense on the ground that it failed to state a claim upon which relief could be granted. The plaintiff supported its motion with two memoranda of law and the defendant opposed the motion with two legal memoranda of its own.
At oral argument on the plaintiff's motion to strike. This Court struck two of the defendant's five special defenses without objection, but declined to rule on the other three. Instead, with the consent of the plaintiff, the Court continued the case to afford the defendant a further opportunity to replead, and thereby clarify, its remaining special defenses.
On March 29, 1996, the defendant took advantage of this further pleading opportunity by filing his Second Revised Special Defenses. In that pleadings. which the plaintiff now moves to strike in its entirety. the defendant asserts three special defenses: first, that all proceedings in this action are null and void because the defendant is in bankruptcy, under Chapter 11 of the Federal Bankruptcy Code, and thus all claims presented against it herein are subject to the automatic stay provision of11 U.S.C. § 362: second, that the plaintiff's action is barred by the equitable doctrine of laches; and third, that the plaintiff is equitably estopped from pursuing this action due to his Department's inconsistent, sporadic and misleading enforcement efforts with respect to the subject Dam over the past twenty years.
The plaintiff claims, in his second motion to strike, that each of the defendant's special defenses is insufficient as a matter of law. He has supported his motion with two additional memoranda of law, both incorporating by reference and relying materially upon the earlier memoranda he submitted on his initial motion to strike. The defendant opposes each aspect of the plaintiff's second motion to strike, supporting its opposition with both its own earlier memoranda of law and an additional legal memorandum.
For the following reasons, the Court concludes that each of the defendant's three special defenses must be stricken, because CT Page 5435 none states a legally sufficient defense to the plaintiff's complaint.
 I
The purpose of a motion to strike is to test the legal sufficiency of a challenged pleading to state a claim on which relief can be granted. Baskin's Appeal from Probate, 194 Conn. 635,640 (1984). When the pleading at issue is a special defense, the question presented to the court is "whether, if the facts alleged are taken to be true, the allegations provide a . . . defense."County Federal Savings Loan Association v. EasternAssociates, 3 Conn. App. 582, 585 (1985).
In ruling on a motion to strike, the court is limited to the allegations of the challenged pleading. King v. Board ofEducation, 195 Conn. 90, 93 (1985). Construing those allegations in the light most favorable to the pleader, the court must determine whether the facts therein stated, together with such other facts as are provable thereunder or necessarily to be implied therefrom, will be sufficient, if proved at trial, to establish a valid defense to one or more of the opposing party's claims or causes of action. Sheiman v. Lafayette Bank TrustCo., 4 Conn. App. 39, 42 (1985). If they are not, then the motion to strike must be granted.
 II
The defendant's first special defense is that "the instant case and any orders entered in it or in connection with it are null and void" under 11 U.S.C. § 362, the automatic stay provision of the Federal Bankruptcy Code. Section 362 provides in pertinent part as follows:
 (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of —
 (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against a debtor that was or could have been CT Page 5436 commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title:
 (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
 (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate:
 (4) any act to create, perfect, or enforce any lien against property of the estate;
 (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
 (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;
 (7) the set-off of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and
 (8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.
The defendant claims, more particularly, that this Court cannot enter judgment herein because this action has been stayed, since its very inception, under subsections (a)(1) and (a)(6) of Section 362. On this score, the defendant presents the following argument:
Prior to the commencement of this action, the defendant filed for bankruptcy under Chapter 11 of the Federal Bankruptcy Code. It thereby invoked and brought itself under the protection of the federal bankruptcy laws, including the above-quoted automatic stay provision. Because the defendant's bankruptcy petition is still pending, it remains entitled, now as when the plaintiff CT Page 5437 commenced this action, to a stay of all proceedings against it which fall within the scope of Section 362.
As relief for the alleged dam safety violations here at issue, the plaintiff has requested, inter alia, the imposition of civil penalties, the assessment of all reasonable costs and expenses incurred by the State in investigating, detecting, controlling and abating such violations, and the issuance of an injunction which would probably require the defendant to spend substantial sums of money. According to the defendant, this action thus presents a "claim," within the meaning of the Federal Bankruptcy Code, for it asserts both a "right of payment" and "a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment[.]"11 U.S.C. § 101(5)(b).
The defendant further argues that since the alleged violations here at issue predate the filing of its bankruptcy petition, the plaintiff's "claim" necessarily "arose before the commencement of . . . [its bankruptcy] case," within the meaning of 11 U.S.C. § 362 (a)(1) and (6). Therefore, concludes the defendant, this case has been stayed ever since it was commenced, and all proceedings conducted and orders entered in or in connection with it are null and void, because: (1) it is an "action . . . to recover a claim against [a] debtor that arose before the commencement of the [debtor's bankruptcy] case," under Section 362(a)(1): and (2) the taking of any step to prosecute this action is an "act to collect, assess, or recover a claim against the debtor that arose before the commencement of th[at] case[.]" under Section 362(a)(6).
The plaintiff moves to strike this special defense[1] on three grounds: first, that this action does not in fact assert a "claim." as that term is defined in the Federal Bankruptcy Code: second, that even if the action does assert a "claim," the defendant has not alleged that that "claim" arose before its bankruptcy case began: and third, that in any event, this action is exempt from the automatic stay under subsection (b)(4) of Section 362, because it is "an action . . . by a governmental unit to enforce such governmental unit's police or regulatory power." For the following reasons, the Court agrees with the plaintiff that the defendant's first special defense must be stricken.
A CT Page 5438
The automatic stay provision of the Federal Bankruptcy Code is designed to bring an immediate halt to all debt-collection efforts against a bankrupt debtor as soon as his bankruptcy petition is filed. Bridgeport v. Debek, 210 Conn. 171, 185
(1989). Its broad purposes in so doing are well explained as follows in the official Report of the House Judiciary Committee which preceded its passage:
 The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.
 The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.
H. Rept. No. 95-595 to accompany H.R. 8200, 95th Cong. 1st Sess. (1977) pp. 340-44.
In light of its above-described purposes, the automatic stay thus does not simply operate to prevent creditors of bankrupt debtors from executing upon existing judgments against them and/or foreclosing upon existing liens against their property. Instead, because the very process of defending against a collections or foreclosure action can be both time-consuming and expensive, ultimately threatening to deplete the debtor's dwindling assets before they can be used to pay off his debts, the automatic stay suspends all activity in any debt-collection action as soon as the bankruptcy petition is filed.
The automatic stay thus applies at once to all actions or proceedings, pending or potential, which fall within its scope, CT Page 5439 whether or not the debtor's opponents in those matters, or the tribunals before which they are pending, are made aware of it. The debtor cannot waive the protection of the automatic stay, by his silence or otherwise, for the protection of the stay belongs not only to him, but to all of his creditors. Therefore, any proceeding conducted or order entered in an action which is subject to the automatic stay is null and void.
The reach of the automatic stay, moreover, is not limited to formal efforts to collect debts through the judicial, the administrative, or other legal processes. Rather, it extends, under subsection (a)(6) of Section 362, to "any act." formal or informal. "to collect, assess or recover" a prepetition debt.
 B
The only actions or proceedings which are automatically stayed under subsection (a)(1) of Section 362 are those which assert "claim[s] against the debtor," within the meaning of the Federal Bankruptcy Code. Similarly, the only "act[s]" which are automatically stayed under subsection (a)(6) of Section 362 are those which are engaged in to collect, assess or recover such a "claim."
The defendant correctly notes that under 11 U.S.C. § 101
(5)(b), the term "claim" is defined, for the purposes of the Federal Bankruptcy Code, to include both a "right of payment" and "a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment[.]" Id. In this case, though the plaintiff seeks monetary penalties, reimbursement for all investigation, detection, and enforcement costs and expenses, and injunctive relief which would require the defendant to expend funds to study and repair its unsafe dam, he does not assert a "claim," within the foregoing definition.
To begin with, this is not an action to collect an existing money judgment, which, if satisfied at this time, would give the plaintiff an unfair preference over the defendant's other creditors. Nor is it an effort to obtain such a judgment based on some pre-petition financial obligation which the defendant owes to the State. Instead, to the extent that this action seeks to impose direct financial obligations upon the defendant, its clear purpose in so doing is to remedy alleged violations of the State's dam safety laws, which the plaintiff is empowered to enforce. CT Page 5440
Under General Statutes § 22a-401, "[a]ll dams, dikes, reservoirs and other similar structures. . . . which, by breaking away or otherwise, might endanger life or property, [are made] subject to the jurisdiction [of the plaintiff, as] conferred by . . . chapter [446j of the General Statutes]." In the exercise of his statutory authority, the plaintiff is responsible, interalia, for: (1) "formulat[ing] all rules, definitions and regulations necessary to carry out the provisions of . . . chapter [446j:]" id.: (2) "investigat[ing] and inspect[ing] or caus[ing] to be inspected all dams or other structures which, in his judgment, would, by breaking away, cause loss of life or property damage[:]" Conn. Gen. Stat. § 22a-402: and (3) "[i]f, after any [such] inspection . . ., [he] finds any such structure to be in an unsafe condition, . . . Order[ing] the person, firm or corporation owning or having control thereof to place it in a safe condition or to remove it and . . . fix[ing] the time within which such order shall be carried out." Id.
Where, as here, the plaintiff has inspected a dam, found it to be in an unsafe condition, and issued an order requiring it to be repaired within a given time frame, he is empowered, upon learning that his order has been violated, to sue for its enforcement in a court of law. Conn. Gen. Stat. § 22a-6
(a)(3). He is specifically empowered, in any such lawsuit, to seek the issuance of an injunction, to compel immediate compliance with his order, id., and the imposition of penalties, Conn. Gen. Stat. § 22a-407, and other statutory sanctions, Conn. Gen. Stat. § 22a-6a(a), to remedy past violations of that order, and thus to deter such violations in the future.
General Statutes § 22a-407, the provision in chapter 446j upon which the plaintiff bases its request for monetary penalties, provides as follows:
 Any person, firm or corporation . . . failing to build, repair, maintain or remove any . . . [dam or other] structure when so ordered or directed by the commissioner under the authority of this chapter, shall forfeit to the state a sum not exceeding five hundred dollars, to be fixed by the court, for each offense. Each violation shall be a separate and distinct offense and, in case of a continuing violation, each day's continuance thereof shall be deemed to be a separate and distinct offense. CT Page 5441
The plaintiff's right to seek monetary penalties under this statute is obviously not based upon the existence of any pre-existing debt from the defendant to the State. Rather, it is based upon the defendant's alleged violation of the plaintiff's Order to comply with the State's dam safety laws, which the plaintiff was empowered by law to issue and the defendant was required by law to obey. Here, then, the imposition of a monetary penalty for each proven violation of the plaintiff's Order would operate both to punish the defendant for the violation in question and to deter him from engaging in such conduct in the future. The pursuit of such are remedy to promote the publics safety is clearly not a "claim," under the Federal Bankruptcy Code, for it cannot reasonably be considered an effort to collect a pre-existing debt.
For similar reasons, the plaintiff's request for reimbursement of all reasonable costs and expenses of the State in detecting, investigating, controlling and abating the alleged dam safety violations here at issue is also not a "claim," within the meaning of the Federal Bankruptcy Code. Instead of establishing a right of payment as to some pre-existing debt owed to it by the defendant, the statute authorizing such reimbursement, General Statutes § 22a-6a, was intended to afford the plaintiff another useful tool to enforce the State's dam safety laws. Connecticut Building Wrecking Co. v. Carothers,218 Conn. 580, 607 (1991) (expressly noting that General Statutes § 22a-6a was passed "in order to strengthen the commissioner's enforcement powers," and thus that any decision to impose costs and expenses thereunder was to be understood as a remedial order" (emphasis in original)). Consistent with these observations, the United States Court of Appeals for the Second Circuit has authoritatively stated that Section 362 does not stay governmental actions to recover past and future costs incurred in responding to environmental violations, because a request for such costs does not constitute a "claim." City of New York v.Exxon Corp., 932 F.2d 1020, 1024 (2d Cir. 1991).
Against this background, it is apparent that the defendant's first special defense must be stricken, for the only other basis for asserting that this action present a "claim" is obviously unavailing. "A right to an equitable remedy for breach of performance if such breach gives rise to a right of payment[,]" which is the alternative definition of the term "claim" on which the defendant relies, is a right arising under an order requiring CT Page 5442either the performance of some task or obligation or the making of a payment: in lieu of such performance. When the creditor of bankrupt debtor has such a right, the law requires him not to pursue either form of relief without the permission of the bankruptcy court, for it he is successful, he will either, by accepting payment, collect a prepetition debt that should be discharged in bankruptcy, or, by seeking performance, abandon a right of payment as to funds which should be made available for the benefit of all the debtor's creditors.
In this case, the plaintiff is not asserting any right to an equitable remedy for a breach of performance that gave rise to a right of payment. Under the provisions of chapter 446j, the plaintiff had no choice but to issue the subject order once he determined, upon inspection, that the dam in question was in an unsafe condition. Having done so, as the statutes required him to, for the sole purpose of avoiding "loss of life or property damage," Conn. Gen. Stat. § 22a-402, the plaintiff was not empowered to accept a payment in lieu of the compliance with his order. Thus the plaintiff's instant claim for injunctive relief is not a "claim," within the meaning of the Federal Bankruptcy Code, and this action is not subject to the automatic stay. Accordingly, the defendant's first special defense must be stricken because it is insufficient as a matter of law.
 C
The second basis upon which the plaintiff challenges the defendant's first special defense is that the defendant has failed to plead that the plaintiff's "claim" against it "arose before the commencement of . . . [its bankruptcy] case."11 U.S.C. § 362 (a)(1), (6). For the following reasons, the Court concludes that that challenge has merit.
In its Second Revised Special Defenses, the defendant pleads, in part, as follows: "At a point in time prior to the institution of this lawsuit and at all times during this lawsuit the Defendant has been operating under the protection of the federal bankruptcy laws." Id. p. 1. All that follows from this unilluminated allegation, which is the defendant's only allegation concerning the chronology of events in this case, is that the defendant filed for bankruptcy at least one day before the instant action was commenced. This does not mean, however, that all or any part of the plaintiff's alleged "claim" against it actually arose before the commencement of the defendant's CT Page 5443 bankruptcy case, for the defendant's pleading is utterly silent on that subject.
An examination of the plaintiff's original complaint, moreover, does nothing to advance this inquiry, for all it reveals are the date of the plaintiff's subject Order, the deadlines by which compliance was to be had with those parts of the Order now claimed to have been violated, and the date on which the complaint was verified. The plaintiff's Order was issued on April 7, 1994. The defendant is now alleged to have violated parts of the Order which were to have been complied with within 30 days, 60 days, 90 days and 180 days from the date on which the Order was issued. The original complaint was verified by counsel on March 15, 1995. From these additional facts it can be inferred that the plaintiff's alleged "claim" against the defendant first arose no earlier than May 7, 1994, when the first deadline for compliance with the Order passed, and no later than October 4, 1994, when the last such deadline passed. Even so, it cannot thereby be determined whether the defendant filed for bankruptcy before or after those dates.
In conclusion, the defendant's first special defense must also be stricken because, by failing to allege facts which show, or from which it can necessarily be implied, that the alleged "claim" herein asserted by the plaintiff "arose before the commencement of the [defendant's bankruptcy] case," it does not sufficiently plead a violation of the automatic stay provision under subsections (a)1) and/or (a)(6) thereof.
 D
The final basis upon which the plaintiff challenges the legal sufficiency of the defendant's first special defense is that it is "an action . . . by a governmental unit to enforce such governmental unit's police or regulatory power, and thus is exempt from the automatic stay under subsection (b)(4) of Section 362. For the following reasons, the Court concludes that the defendant's first special defense is vulnerable to this challenge as well. The full text of Section 362(b)(4) is as follows:
 (b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Program Act of 1970, does not operate as a stay — CT Page 5444
* * * *
 (4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such unit's police or regulatory power.
So drafted, this provision raises two significant questions in this case.
The first, and most easily answered, of those questions is whether or not this case is indeed "an action or proceeding by a governmental unit to enforce such unit's police or regulatory power." If it is, there can be no valid claim that this action is stayed under subsection (a)(1) of Section 362, for the (b)(4) exception applies expressly thereto. The second question, however, is whether this action, even if it is not stayed under subsection (a)(1) of the statute, is nonetheless stayed under subsection (a)(6) of the statute, to which the (b)(4) exception makes no explicit reference.
There can be no serious question that this action is not stayed under subsection (a)(1) of Section 362, for as explained in Part II.B of this opinion, supra, this case is obviously an action by the plaintiff Commissioner to enforce important regulatory powers conferred upon him the General Statutes. The only exception to this rule is for actions or proceedings instituted by government agents or officials primarily for "pecuniary purposes," that is, to protect the government's pecuniary interest rather than to promote the health and/or safety of its citizens. 9A Am.Jur.2d, Bankruptcy, § 1456, p. 331. In that event, the government must be treated like every other creditor of the bankrupt debtor, and thus, like they, be made to wait for the disposition of his bankruptcy case.
When, however, an action is commenced by a governmental unit to enforce the police or regulatory power conferred upon it, the automatic stay does not apply even if the relief requested would place a significant strain on the bankrupt debtor's finances. The reason for this exception to the automatic stay is said to be "the recognition that enforcement of such laws merits a higher priority than the debtor's rights to a `cease fire' or his creditors' rights to an orderly administration of the estate."Id., § 1454, p. 329. CT Page 5445
Here, the plaintiff Commissioner seeks the enforcement of a dam safety order which was entered by his predecessor to ensure the safety of the public. To remedy all proven violations of that order, and thus to promote full compliance with the order in the future, he seeks an injunction, the imposition of civil penalties, and the assessment of costs and expenses. This, then, is an "action . . . by a governmental unit to enforce such governmental unit's police or regulatory power," which is exempted from the automatic stay by Section 362(b)(4).
Recognizing the likelihood that this Court would rule that actions by the State or its agents cannot be stayed under subsection (a)(1) of Section 362 due to the operation of subsection (b)(4) of that statute, the defendant has argued, as a fallback position, that such actions are stayed under subsection (a)(6) of the statute, to which the (b)(4) exception does not apply. This argument, though creative, must fail for several reasons.
Despite its apparent breadth, subsection (a)(6) of the automatic stay provision does not deal with actions or proceedings at all, precisely because actions and proceedings are otherwise covered by subsection (a)(1) of that provision. It is a matter of axiom that "[a] statute should be construed so that no word in it is treated as superfluous or insignificant." State v.Roque, 190 Conn. 143, 150 (1983). "Insofar as it is possible, the entire enactment is to be harmonized, each part made operative."Id., 151 (quoting State v. Grant, 176 Conn. 17, 20 (1978)). Thus, though analogous statutory terms or provisions may at times be read together "in their cognate sense, to express the same relations, and give color and expression to each other[,]" Statev. Roque, supra, 153 (quoting People v. Goldman, 7 Ill. 3d 253,255, 287 N.E.2d 177 (1982)), such a reading must be rejected if its necessary effect is to render one or more of those terms or provisions, or some other portion of the statute, wholly meaningless or ineffective.
If the term, "act to collect, assess, or recover a claim against the debtor," as used in subsection (a)(6) of Section 362, were defined so broadly as to include within it any "action or proceeding . . . to recover a claim against the debtor," as that term is used in subsection (a)(1) of the statute, the latter, more particularized subsection would be wholly unnecessary. Such a reading, moreover, would render totally ineffective the exception to the automatic stay as set forth in subsection CT Page 5446 (b)(4), for in every action or proceeding that would otherwise be exempted from the automatic stay, the action or proceeding could simply be recharacterized as an "act to collect, assess or recover a claim against the debtor," and on that basis the stay would remain in effect under subsection (a)(6).
Therefore, a more sensible reading of subsection (a)(6) is that in spite of its broad language, it was never intended to apply to actions or proceedings, or, in fact, to any other type of debt-collection effort otherwise covered by the other, more specific subsections of the statute. This reading, in fact, is confirmed by the following official commentary on subsections (a) (1) and (a)(6) of the statute, which appeared as follows in the Report of the House Judiciary Committee:
 Subsection (a) defines the scope of the automatic stay, by listing the acts that are stayed by the commencement of the [bankruptcy] case. The commencement or continuation, including the issuance of process, of a judicial, administrative or other proceeding against the debtor that was or could have been commenced before the commencement of the bankruptcy case is stayed under paragraph (1). The scope of this paragraph is broad. All proceedings are stayed, including arbitration, license revocation, administrative, and judicial proceedings. Proceedings in this sense encompasses civil actions as well, and all proceedings even if they are not before governmental tribunals.
* * * *
 The stay is not permanent. There is adequate provision for relief from the stay elsewhere in the section. However, it is important that the trustee have an opportunity to inventory the debtor's position before proceeding with the administration of the case. Undoubtedly the court will lift the stay for proceedings before specialized or nongovernmental tribunals to allow those proceedings to come to a conclusion. Any party desiring to enforce an order in such a proceeding would thereafter have to come before the bankruptcy court to collect assets.
* * * * CT Page 5447
 Paragraph (6) prevents creditors from attempting in any way to collect a prepetition debt. Creditors in consumer cases occasionally telephone debtors to encourage repayment in spite of bankruptcy. Inexperienced, frightened, or ill-counseled debtors may succumb to suggestions to repay notwithstanding their bankruptcy. This provision prevents evasion of the purpose of the bankruptcy laws by sophisticated creditors.
H. Rept. No. 95-595 to accompany H.R. 8200, 95th Cong., 1st Sess. (1977) pp. 340-44.
It is apparent from this commentary that subsections (a)(1) and (a)(6) of Section 362 were intended to have quite different, though complementary, functions. Consistent with its text, which deals exclusively with creditors' formal efforts to collect debts through the judicial, the administrative, or other legal processes, subsection (a)(1), as described by the House Judiciary Committee, deals only with debt-collection "proceedings-' against bankrupt debtors. Though it applies broadly, within its scope, to every kind of debt-collection "action or proceeding," in governmental or nongovernmental forums alike, it has no application whatsoever to any other type of debt-collection effort.
Subsection (a)(6), as previously noted, is broadly worded to include any "act to recover, assess, or collect" certain specified types of"claims" against the debtor. However, as described by the House Judiciary Committee, its function was not to duplicate the other, more particular subsections of Section 362, but to expand the scope and enhance the effectiveness of that provision by closing off all other avenues, not specifically mentioned in the statute, by which wily creditors might attempt to pursue their bankrupt debtors despite the pendency of their bankruptcy petitions. This provision was therefore not intended to cover proceedings before courts, administrative agencies and other tribunals, which were already fully covered by subsection (a)(1) of the statute, and are not even mentioned in the foregoing official commentary. Instead, it was intended to cover all other situations in which creditors might act outside legal channels to force or induce bankrupt debtors to privately "repay [their debts] notwithstanding their bankruptcy." Id.
CT Page 5448
Against this background, it is apparent that the only subsection of Section 362 which applies the automatic stay to civil actions is subsection (a)(1), not subsection (a)(6). For this reason, it is of no moment that the exception to the automatic stay which appears in subsection (b)(4) of the statute makes no mention of, and does in terms apply to, subsection (a)(6). The reason for that "omission" is simply that subsection (b)(4) already applies to subsection (a)(1), which is the only subsection of the statute that extends the automatic stay to "action[s] or proceeding[s]."
For the foregoing reasons, the Court hereby grants the plaintiff's motion to strike the defendant's first special defense.
 III
The defendant's second special defense is that the plaintiff's actions is barred by laches. In support of that defense, the defendant alleges that:
 a.) Throughout the twenty-year history of the plaintiff's regulatory efforts directed toward Hatch Pond Dam, the defendant and the prior owners of the Dam have exerted a substantial concerted, good faith effort to comply with the plaintiff's requirements.
 b.) The plaintiff's reactions to these efforts has been sporadic and inconsistent alternately seeking compliance with orders acknowledging compliance and/or taking no action whatsoever regarding the Dam for substantial periods of time.
 c.) The plaintiff's substantial and inexcusable delay in seeking enforcement of any prior orders has prejudiced the defendant by leading [sic] it to believe that enforcement was not being sought and/or that compliance had been achieved.
 d.) As a result, the plaintiff's present action is barred by laches.
Second Revised Special Defenses, pp. 1-2.
The plaintiff moves to strike this second special defense on CT Page 5449 the ground that the doctrine of laches cannot be invoked against the State. For the following reasons, the Court agrees with the plaintiff and grants this portion of his motion to strike.
Under our law, laches is defined as "unreasonable delay" in the assertion of a right or claim. Gage v. Schavoir, 100 Conn. 652, 644 [(1924)]. As such, it "consists of two elements: `First, there must have been a delay that was inexcusable, and second, that delay must have prejudiced the . . . [party claiming it.]'"Kurzatkowski v. Kurzatkowski, 142 Conn. 680, 685 [(1955)].
Though laches may appropriately be asserted against a private party, it may not be asserted against a public agent or official to prevent the enforcement of public rights. This principle, that the State cannot be prevented from acting in its sovereign capacity by laches, "has been generally accounted for and justified on grounds of policy rather than upon [some] inherited notion about the personal privilege of the king . . . So complete has been its acceptance that the implied immunity of the domestic sovereign, state or national, has been universally deemed to be an exception to local statutes of limitations where the government, state or national, is not expressly excluded."Guarantee Trust Co. v. United States, 304 U.S. 126, 132-33
(1938). Accord, Illinois v. Kentucky, 111 S.C. 1877, 1883 (1991) (recently reaffirming Guarantee Trust Co. v. United States).
The Connecticut Supreme Court has long accepted the above-described principle, consistently ruling, since 1931, that public agencies are exempt from the defense of laches. Appeal ofPhillips, 113 Conn. 40, 45 (1931); Bianco v. Darien, 157 Conn. 548,556 (1969) (following Phillips); Dupuis v. Submarine BaseCredit Union, Inc., 170 Conn. 344, 353 (1976) (following Bianco).
In Phillips, the appellant claimed that a municipality had lost its right to reclaim a portion of a public highway over which a building owned by him had extended for nearly fifty years. In rejecting that claim and the earlier case law on which it was based, Chief Justice Maltbie explained as follows that, although public rights may be lost by intentional abandonment, they cannot be lost by mere delay in asserting them:
 The appellant further claims that by the maintenance of the building over the building line from the time of its construction in 1882 until the present proceeding, a right to continue it in that location has come into existence. In Derby v. Alling,
CT Page 5450 40 Conn. 410, 436 [(1873)], we said: "There is no statute of limitations which is applicable to this case. The public could not be technically disseized, but public as well as private rights may be lost by unreasonable delay in asserting them. They may also be lost by an abandonment of them by those interested in their enforcement. Such abandonment may be inferred from circumstances or may be presumed from long continued neglect." See also Kent v. Pratt, 73 Conn. 573, 581, ¶ 8 Att. 418 [(1901)]; Yale University v. New Haven, 104 Conn. 616, 619, 134 Att. 268 [(1926)]. While in Derby v. Alling, supra, our language suggests that an "unreasonable delay in asserting" public rights and an abandonment of them are alternative ways in which they may be lost, our law has since crystallized into the principle that it is only by abandonment that such rights can be lost through failure to assert them and a delay in doing so is only evidence of such abandonment.
Phillips, supra, 45. So stating, the Court held that in the absence of intentional abandonment, the municipality had not lost its right to reclaim the highway for public use despite its half-century delay in asserting that right.
Because the Supreme Court, as previously noted, has never since deviated from the rule announced in Phillips, this Court must conclude that here, in an action by a public official to assert the public's rights under our State's environmental laws, the defendant's second special defense of laches is insufficient as a matter of law. Accordingly, the Court hereby grants the plaintiff's motion to strike that special defense.
 IV
The defendant's third special defense is that of equitable estoppel. In support of that defense, the defendant has alleged as follows:
 a.) Throughout the twenty year history of the plaintiff's regulatory efforts directed toward [Hatch Pond Dam the defendant and the prior owners of the Dam have exerted a substantial, concerted. good faith effort to comply with the] plaintiff's CT Page 5451 requirements.[2]
 b.) The plaintiff's reactions to these efforts has been sporadic and inconsistent alternately seeking compliance with orders acknowledging compliance and/or taking no action whatsoever regarding the Dam for substantial periods of time.
 c.) Prior to the entry of the order herein, sued on, the defendant understood that its previous efforts at compliance and accomplishments in that regard, in conjunction with the plaintiff's communication, silence and/or acquiescence thereto, induced the defendant to believe that no further efforts were needed in regard to the Dam.
 d.) As a result, the defendant changed its position in reliance thereon and did not proceed with any further compliance efforts all to its great detriment.
 e.) Since the date of the entry of the subject order the plaintiff has steadfastly maintained its finality, non-appealable nature and insistence on unwavering enforcement of its terms.
 f.) The plaintiff has expressed no interest in the defendant's compliance efforts or maintenance of its dam.
 g.) Under all of the attendant circumstances it is apparent that it would have been futile to seek any appeal of the order which the plaintiff now seeks to enforce which could not result in a decision favorable to the defendant and would invariably result in further judicial proceedings.
 h.) Accordingly, the plaintiff is and should be equitable estopped from the enforcement of the subject order.
Second Revised Special Defenses, pp. 2-3.
The plaintiff has moved to strike this special defense on the ground that it fails to allege all the essential elements or estoppel against a public agency. For the following reasons, the CT Page 5452 Court agrees with the plaintiff's and grants this portion of his motion to strike.
The general rule in Connecticut is that "estoppel may not be invoked against a public agency in the exercise of its governmental functions." Kimberly-Clark Corp. v. Dubno, 204 Conn. 137,146-47 (1987). "However, a limited exception [to the rule] . . . is made where the party claiming estoppel would be subjected to a substantial loss if the public agency were permitted to negate the acts of its agents." Id.
In Zotta v. Burns, 8 Conn. App. 169 (1986), the Appellate Court explained the scope of that exception as follows:
 Estoppel against a governmental agency may only be invoked in limited circumstances and with great caution. Greenwich v. Kristoff; 2 Conn. App. 515, 522 (1984). "Under our well established law, any claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury." Zoning Commission v. Lescynski, 188 Conn. 724, 731
(1982). In order to invoke a claim of estoppel against a government agent, the claimant must also show that the government agent who induced the detrimental reliance had authority to act in such matters and that special circumstances exist which make it highly inequitable or oppressive to enforce the applicable law. West Hartford v. Rechel, 190 Conn. 114, 121 (1983). Further, the party claiming estoppel in such cases must establish that he exercised due diligence in ascertaining the legality of his conduct, "and that he not only lacked the knowledge of the true state of things but had no convenient means of acquiring that knowledge." Greenwich v. Kristoff; supra.
Zotta v. Burns, supra, 176.
Thereafter, our Supreme Court, in Bauer v. Waste Managementof Connecticut, Inc. 234 Conn. 221, 247 (1995), authoritatively restated the test for public agency estoppel as follows: CT Page 5453
 [I]n order for a court to invoke [public agency] estoppel, the aggrieved party must establish that: (1) an authorized agent of the [public entity or agency] had done something calculated or intended to induce the party to believe that certain facts existed and to act on that belief; (2) the party had exercised due diligence to ascertain the truth and not only lacked knowledge of the true state of things, but also had no convenient means of acquiring that knowledge; (3) the party had changed its position in reliance on those facts, and (4) the party would be subjected to a substantial loss if the municipality were permitted to negate the acts of its agents. See Zotta v. Burns, 8 Conn. App. 169, 175-76, 511 A.2d 373 (1986); Greenwich v. Kristoff,
2. Conn. App. 515, 522-23, 481 A.2d 77, cert. denied, 194 Conn. 807, 483 A.2d 275 (1984).
The Commissioner, citing Bauer, claims that the defendant has failed to plead any facts as to several of the essential elements of public agency estoppel. In particular, he argues that
 the defendant has not alleged the name of any authorized agent of DEP who took any action or said anything that would lead it to reasonably believe that DEP did not insist on compliance with the order. Nor has the defendant alleged that it exercise[d] due diligence to ascertain the true facts relating to enforcement of the order and had no convenient means of obtaining that information. [Footnote omitted.] At most, the defendant baldly alleges that the plaintiff"would alternately seek enforcement of its orders, acknowledge compliance with its order and totally forget about its order for substantial periods of time." These conclusory allegations fall far short of alleging an adequate estoppel defense.
Plaintiff's Reply Memorandum, March 25, 1996, p. 8.
The defendant's two-fold response to the plaintiff's arguments is as follows: first, that since Bauer was a case involving a municipality, and a municipal zoning commission in particular, it is not binding authority in this case, which has been brought by an agent of the State; and second that even if the elements listed in Bauer apply to claims of estoppel against CT Page 5454 the State or its agents, they are merely requirements of proof that must be satisfied by evidence at trial, not requirements of pleading that must be met in a special defense. At no time does the defendant argue that each and every element of public agency estoppel is pleaded his third special defense.
The defendant's first argument is obviously without merit for the test announced in Bauer, though concededly articulated in a case involving a municipality, was based expressly on the Appellate Court's Zotta decision where the public agency estoppel doctrine was discussed and applied in a case against the State Commissioner of Transportation. The Bauer Court clearly signalled that in Connecticut, all claims of public agency estoppel against State and municipal agents and agencies alike. are governed by the same four-part test.
The defendant's second argument, though more interesting and troublesome than his first, is no less unavailing. In that argument, to reiterate the defendant claims that the Bauer
requirements are requirements of proof not requirements of pleading, and thus that their absence from his special defense is not fatal to his claim.
It is true that the Bauer Court in articulating its test for estoppel discusses the facts which must be established' at trial "for a court to invoke" that defense. That usage, it must be noted is consistent with the long standing rule in Connecticut that estoppel may be raised and relied upon at trial even if it has not been specially pleaded. See, e.g., Wolfe v. WallingfordBank Trust Co., 124 Conn. 500 (1938).
Here, however, the defendant has obviously chosen though the law did not require him to, to plead estoppel as a special defense, and the plaintiff, wishing to avoid the inclusion of what he claims to be baseless, misleadingly misstated claims in the pleadings, has moved to strike that special defense. The Court is thus called upon to decide the only issue before it: whether that pleading, as it has been drafted and filed by the defendant, states a legally sufficient special defense. The Court will decide that issue in this procedural contest without purporting to decide the legal viability of any other formulation of that claim that the defendant may later attempt to offer at trial, whether or not it is supported by a written pleading. SeeAllied Grocers Cooperative, Inc. v. Caplan, 30 Conn. App. 274, 279
n. 7 (refusing to review the trial courts striking of an estoppel CT Page 5455 defense because the defendant who could have raised that defense at trial even after it was stricken, was not prejudiced by the trial court's ruling).
Turning, then to the elements of the Bauer test itself, the Court must decide whether or not the defendant's third special defense pleads facts which, construed in the light most favorable to the defendant, support each essential element of that test. For the following reasons, it does not.
Though the first and third elements of the Bauer test are arguably touched upon, albeit vaguely, in the defendants pleading the second and fourth elements plainly are not. Even though the defendant alleges in general terms that it was misled by the official actions and inaction of the plaintiff and his predecessors over a period of twenty years it makes no allegation whatsoever that it exercised due diligence to ascertain the truth and not only lacked knowledge of the true state of things, but also had no convenient means of acquiring that knowledge. Bauer,supra, 247. To the contrary it clearly suggests that it always knew the relevant law and was familiar with the nature of the plaintiff's orders, but was simply uncertain whether the plaintiff would pursue their enforcement with vigor. In either case, even if the latter could constitute a valid defense of estoppel under particular circumstances, one essential fact that must be proved to prevail on that claim is that the defendant if misled by the Commissioner's conduct, had no knowledge of the true state of things and no convenient means of acquiring that knowledge. The absence of such allegations from its third special defense is clearly fatal thereto.
As to the fourth element of public agency estoppel — that it will be subjected to a substantial loss if the Commissioner is permitted to negate his own acts and those of his agents and predecessors — the defendant's third special defense is utterly silent. Its bare-bones assertion that it "changed its position in reliance" on the plaintiff's sporadic, inconsistent enforcement efforts over the past twenty years, and that it did not proceed with any further compliance with the plaintiff's orders, "all to its great detriment," falls far short of the necessary allegation that it will "suffer substantial loss" if the Commissioner is now permitted to negate his own acts and those of his agents and predecessors. For this reason as well, the defendant's third special defense is fatally flawed, and must be stricken, without prejudice to the defendant's right CT Page 5456 to replead or, if he chooses, to raise a proper, fully documented estoppel claim at trial. See Allied Grocers Cooperatiue, Inc. v.Caplan, supra, 280 n. 7.
SHELDON, J.